BECK vs. BRIDGMAN.

1. SPECIFIEC PERFORMANCE: *Party not able to perform part of contract.*

A party who cannot perform a part of his contract for the conveyance or exchange of land, can not demand specific performance from the other where there has been no part performance ; but a party able to perform his part may claim of the other, performance as far as he is able, with compensation for the deficiency, if under the circumstances, there would be nothing inequitable in the claim.

2. SAME : *When refusal to perform will be a fraud.*

When either party has in good faith done anything in performance of the contract which has put him in such a situation that a refusal to perform on the part of the other would operate as a fraud for which the law would afford no adequate remedy, a court of equity, to prevent injurious fraud, and compel good faith

Beck v. Bridgman.

will decree specific performance all round; or when that may not be possible, will execute the contract as near as may be, and make compensatory adjustment.

APPEAL from *Franklin* Circuit Court in Chancery.

HON. W. D. JACOWAY Circuit Judge.

*W. W. Mansfield* and *Henderson & Caruth*, for appellants:

One who asks *specific performance*, must show either that he has performed or is able to perform the contract on his part. *Adams Eq.*, 190-193; *Story Eq.*, vol. 2, sec. 778, *6th ed;* 11 *Ark.*, 378; 19 *Ib.*, 51.

There was no such part performance as to take the case out of the statute of frauds. 18 *Ark.*, 466; 21 *Ib.*, 533;

The exchange of personalty had no connection with any contract for the exchange of lands. If he was defrauded in the exchange of personalty his remedy was at law.

The possession taken by appellee was without the permission of Mrs. Beck. He was a mere trespasser. 21 *Ark.*, 277 .

On a bill for specific performance, the contract must be clearly and unequivocally established. 23 *Ark.*, 421;

*U. M. & G. B. Rose*, also, for appellants:

Appellee could not perform his part of the supposed agreement, and is not therefore entitled to specific performance. 23 *Ark.*, 704; 2 *Ohio*, 383; 15 *Am. Dec.*, 557; 12 *Ib.*, 318, 333, 431; *Pomeroy on Spe. Perf. sec.* 323.

It will be decreed only where there is no reasonable doubt as to the terms of the contract. 28 *Am. Dec.*, 45; 1 *John Chy.*, 273; *Id.*, 132; *Pomeroy Spe. Perf. sec.* 136.

The contract was void by the statute of Frauds. The taking possession without the consent of the vendor does not the take case out of the statute. 21 *Ark.*, 227; 28 *Am. Dec.*, 45; 1 *Sand.*, 46.

The grant of the Illinois lands amounted only to a pay-

ment of the purchase price, and does not take the case out of the statute.    18 *Ark.*, 466; 21 *Ib.*, 533; *Purcell v. Miner*, 4 *Wall.* 513.

*Idus L. Feilder* for appellee.

A fraud will be committed upon appellee if the contract be not performed.    The parties cannot be put *in statu quo.* Perfect restitution cannot be had except by specific performance.    33 *Ark.*, 478; 1 *Story, Eq., Sec.* 761.

The contract was an entirety and cannot be rescinded as to part.    No offer to restore and place appellee *in statu quo* has ever been made.    It is now impossible.    *Davis v. Tarwater,* 15 *Ark.*, 286; *Bolton v. Branch,* 22 *Ark.*, 435.

Courts of equity will not do justice by piecemeal.    Having once assumed jurisdiction, they settle all questions between the parties arising out of the same transaction.    They often decree performance *with* compensation for deficiency.    *Bonner v. Little* 38 *Ark.*, 397.    Substantial justice has been done in this case.

Appellants are in peaceable possession of the Illinois lands, except 10 acres, for which they have been decreed compensation.    They have a deed—appellee has none.    To refuse relief would leave appellee helpless, the lands in Illinois and the defendants being beyond the reach of this Court.    Courts of equity will not permit *a fraud to be perpetrated,* and then allow the party to shield himself under the statute of frauds by saying the contract is void.

The taking possession by appellants of appellee's lands, the exchange of personalty *in connection* therewith and as a part of the trade, and the taking possession by apppllee whether rightfully or from necessity, takes the case out of the statute.    See 9 *Gratt,* 1; 1 *H. & M., (Va.)* 110; 9 *Neb.*, 424; 8 *Ib.*, 371.

*John H. Rogers,* also for appellee.

Unless it *clearly* appears that the finding of fact by the

Circuit Court is erroneous, this Court will not disturb it. 23 *Ark.*, *p.* 346; 31 *Ark.*, *p.* 90.

The conveyance of the 10 acre tract by appellee was waived.

A waiver, in this class of cases, is often presumed. *Bispham's Eq.*, sec. 383.

Courts of equity will disregard immaterial matters, and sometimes decree specific performance when a strict compliance with the terms of the contract has not been observed, and will remedy the failure by compensation in damages. *Bispham's Eq.*, sec. 389, 390; 2 *Vol. Story Eq. Ju.*, 7th Ed., sec. 770, 771, 772, 775, 776; *Winne v. Reynolds*, 6 *Paige, Ch'y.*, *p.* 407.

In some cases equity will decree specific performance, not after the letter of the contract, if that would be unconscientious, but modify it according to the change of circumstances. 2 *Vol. Story Eq. Ju.*, sec. 775, *and note 4, and sec.* 777.

Equity will treat the deeds to the Arkansas lands as delivered, as agreed upon. In short, will treat that as done which appellants should have done, to prevent a fraud. 38 *Ark.*, *p.* 57; 2 *Story Eq. Ju.*, sec. 768.

The statute of fraud will not be suffered to become an instrument of fraud. *Idm. and note.*

Again: The contract is taken out of the statute of frauds by a substantial performance by appellee, coupled with such circumstances as puts it beyond the power of a Court of law to give adequate relief, or a Court of equity to put the parties in *statu quo.*

Possession by appellee not necessary. *Browne on the Statute of Frauds*, sec. 460 *and note; Hollis v. Edwards, Vernon R.*, *p.* 159; *Mundy v. Joilliffe*, 5 *N. Y. and Cr.*, *p.* 169; *Bisphams Eq.*, 383 *and cases in note 2.*

Anything is such part performance, which operates as a

fraud upon the opposite party if the contract be not perform-
ed. *Browne on Statute of Frauds, sec.* 448 *and note* 2, *and
sec.* 452 *and* 463; *Morrison v. Peay, Rec'r.,* 21 *Ark., p.* 110;
15 *Ark., p.* 32.

The whole doctrine is one of sound discretion and pecu-
liar circumstances of each case.   30 *Ark.,* 549; 34 *Ib.,* 676.

EAKIN, J.   The appellee, Bridgman, filed this bill in
chancery to obtain specific performance of an alleged agree-
ment for an exchange of his lands in Illinois, for some lands
in Arkansas, made with Mrs. Beck and her son J. A. Ash-
by.   The agreement was verbal, but at the time of filing the
bill, Mrs. Beck had gone to Illinois and taken possession of
the property formerly belonging to Bridgman, and he had
on his part come to Arkansas and taken possession of the
lands of Mrs. Beck and her son, which he claims they had
agreed to give him in exchange.   There had besides been an
exchange of personal property, concerning which there is no
contest as to ownership.   Mrs. Beck had given up to him
the stock, farming utensils and some farm products, upon the
place here at a valuation made by friends, for which she had
accepted property of like nature to an equal value in Illinois.
She denies, however, that the agreement concerning the per-
sonal property had any connection with the transaction by
which she obtained possession of the Illinois lands, or that
the consummation of it is to be considered as a part execu-
tion of the contract, if any there were, by which the agree-
ment concerning the lands would be taken out of the statute
of frauds.   She denies, in effect, that she ever agreed to con-
vey to Bridgman the Arkansas lands, and relies upon that
and the statute of frauds.   As a further element in the de-
fense, it is insisted that, even if it were an agreement for ex-
change, the complainant could not have specific performance,
because there were ten acres of Bridgman's lands in Illinois,
which he claims to have exchanged, to which he has not

made, and cannot make, valid title. The fact as to this is admitted.

Upon the other hand, Bridgman alleges and insists, that the agreement for the exchange was complete; that it involved the personal property also; that the several possessions were taken and held in pursuance of it; that Mrs. Beck obtained her legal conveyance in the mode intended, and then refused to execute her part, in which her son co-operated, refusing to convey his.

The testimony is exceedingly voluminous, uncertain and contradictory. It must be weighed and estimated with much reference to probabilities, and to the ordinary effect of human motives. There is not room, nor would it be useful, to discuss it, in a written opinion. A short statement as to its fair effect will suffice to explain the equitable principles applicable to the case, which are not many nor difficult.

It seems that Mrs. Beck, who, with her son, owned and cultivated the Arkansas lands, had formerly lived in Illinois, and desired to return there to reside. The complainant owned a tract of land there, in the vicinity of the town of Casey, upon which there were several good houses, and which was much more valuable than the Arkansas property of Mrs. Beck. It was encumbered by a mortgage of about $1400. Negotiations took place between Bridgman and some connections of Mrs. Beck, about June, 1877, in which they, acting as her agents, agreed upon an exchange. The terms of it were that she was to discharge the mortgage to the extent of $1400, and give her, and her son's, Arkansas property. Bridgman was to pay any excess which might be due on the mortgage, and give clear title. So far there is no conflict. In anticipation of the closing of the contract on these terms, Mrs. Beck and her son executed deeds of the Arkansas lands, and put them in the hands of friends in Illinois to be ready.

The $1400, to discharge the mortgage, was not immediately paid, but within a few weeks was raised by Mrs. Beck and sent to Illinois. There had been no unreasonable delay in this, as no time for payment had been fixed. But meanwhile, difficulties had been developed, and impediments had arisen regarding Bridgman's title, which very much embarrassed the consummation of the bargain. The separate ten acres was found to be so encumbered by judgments that no deed could be made, and the principal body of the property, which had been sold under the mortgage, was, from lapse of time, no longer subject to redemption by Bridgman. This occurred in the latter part of July, 1877.

With regard to the main body, however, a scheme was adopted by Bridgman and Mrs. Beck's agents for still securing to her that portion. The ten acres was hopelessly lost.

We learn from the transcript that by the laws of Illinois, then in force, although a mortgagor could no longer redeem lands after the lapse of a year from the date of sale, yet a judgment creditor might for three months longer. A son of Bridgeman was a judgment creditor. It was determined to make use of his privilege for the purpose of vesting title in Mrs. Beck, and this was done with the assent of all the parties interested. It does not appear that the son was paid anything for his judgment, but under his right the redemption was made, and the property conveyed to Mrs. Beck by the sheriff, in such manner that her title became absolute on the payment of the $1400, as agreed upon originally. A small balance necessary to the redemption was paid by Bridgman himself. Mrs. Beck went on to Illinois and was put in possession; and the exchange of the personal property in Arkansas for that of Bridgman in Illinois was carried into effect. But, probably under injudicious advice, she then repudiated the bargain of exchange, claiming it had been

abandoned when it was found that Bridgman could not make title. She assumed to hold under her rights acquired through the judgment creditor, and refused to deliver the deeds to the Arkansas property, claiming that Bridgman had put himself at her mercy, and was entitled to nothing but what she might choose to give him. In the conflict of evidence there is some, indeed, which tends to show that he had voluntarily taken that position, to defeat the mortgagee, whom he disliked, but we can scarcely reconcile it with other circumstances. It lacks veri-similitude, and is inconsistent with the subsequent conduct of both parties. He gave up the property in Illinois sometime before he could have been legally required to do so, came on to Arkansas in the fall of 1877, took possession of the property here, real and personal, and has since held it without objection—or at least without demand for its restoration, and from the standpoint of this possession filed this bill in the latter part of March, 1878.

The Chancellor, upon hearing recited the facts, substantially as above stated, with some variation not affecting the principle, and held that the agreement for the exchange had been maintained. By the decree the Arkansas property was divested out of Mrs. Beck and her son, and vested in complainant. A decree for the sum of $300 was made in favor of defendants, by way of compensation for the ten acres.

They appealed.

It is contended that as Bridgman is confessedly not able to execute his part of the contract, with regard to the whole, on account of want of title in these ten acres, he cannot come for specific performance. This is true where there has been a valid contract and no part performance. For in case of a material deficiency the opposite party may reject the whole. But each party is entitled to claim of an opponent unable to perform the whole of his part, a performance so

1. SPECIFIC PERFORMANCE: Inability to perform part of contract.

far as he may be able, with compensation for the deficiency, that is, if, under the circumstances, there should be nothing inequitable in the claim.   Such was the right of Mrs. Beck. She might have abandoned the exchange, and then, even if it had been in writing, Bridgman could not have enforced it. But she elected to take the Illinois property and enjoy it, knowing the deficiency.  She was not driven to a suit to get what she had the right to demand, and her claim to compensation is recognized and enforced by the decree. To allow her to hold all she could get of the Illinois property and give nothing in exchange would be absolutely shocking.

It is contended further that this is not a case for specific performance, because Bridgman did not take possession of the Arkansas lands by the authority of Mrs. Beck, in accordance with the contract, but as a trespasser, and because the delivery of his Illinois lands was in the nature of, and only equivalent to, the payment of purchase money—neither of which, separately or together, constitutes such part performance as will take a case out of the statute of frauds. With regard to the first branch of the objection, we think the principle is correct and the fact somewhat doubtful.   It is not clear that the possession was taken with the assent of Mrs. Beck, although she and her agents have acquiesced in it; and if Bridgman's right depended upon his possession of the property he seeks to secure, his equity could not fairly be considered as made out.   But rightful possession by complainant is not, in all cases, essential to constitute part performance, so as to entitle him to the relief of specific performance.   The exercise of this whole branch of equity jurisprudence, says Mr. Story, is not matter of right in either party.   It depends upon "that sound and reasonable discretion, which governs itself *as far as it may,* by general rules and principles; but at the same time withholds or grants

Beck v. Bridgman.

relief according to the circumstances of each particular case, when these rules and princples will not furnish any exact measure of justice between the parties." *Eq. Jur., Sec.* 742. He says further that it is not possible to lay down any rules and principles which are of absolute obligation and authority in all cases.

The general rule with regard to part performance of parol contracts regarding lands, is plain enough.   It is directed to the prevention of fraud, which would be perpetrated if one party were allowed to refuse performance of a parol contract after the other had in good faith done his part, in the confidence that both would.   Ordinarily the payment of a part or the whole of the purchase money is not, of itself, part performance, because that may be recovered at law.   Still this is not universal, but may be modified by equitable circumstances.   For instance, personal services rendered were held sufficient to constitute part performance, and entitle the plaintiff to specific performance of a parol contract for land in *Davidson v. Davidson,* 2 *Beasl.,* (*N. J.*) 426.

When refusal to perform would result in fraud.

The governing rule controlling the discretion of the Court seems to arise from the purpose of it, and has been usually formulated in this wise:  That where either party has in good faith done anything in pursuance of the contract, which has put him in such situation that a refusal on the part of the other would operate as a fraud, for which the law would afford no adequate remedy, the Court, to prevent injurious fraud, and compel good faith, will decree specific performance all round; or when that may not be possible, will execute the contract as near as may be, and make compensatory adjustments.

If Bridgman cannot now get the Arkansas lands, he will certainly be in bad plight, with little hope of any legal redress.   No Court of Arkansas can restore him to his Illinois titles, even by acting in personam upon Mrs. Beck and

her son, to compel reconveyance. They are in Illinois and the arm of the Court cannot reach them. Considering the strictly legal method by which Mrs. Beck acquired title it is not clear that he could get redress at law by going there. Still it is tolerably clear that having confidence in getting the Arkansas lands, he has so used' the rights of himself and his son, furnished for the purpose, as to put Mrs. Beck in the possession and full enjoyment of property in Illinois, worth several thousand dollars more than what she paid to redeem it, by her own estimate, and that of her advisers, and has got absolutely nothing. It will not do to say that the lands had been foreclosed, and that when the trade was consumated, he had nothing to give. When the original contract was made he had the equity of redemption, and when it was closed his son had it, and either, but for the transactions with Mrs. Beck, might have used it to save the surplus. We think too that the agreement for the exchange of personal property in view of its nature, uses and situation as connected with the land trade, must be considered as the result of it, and as incident to the more convenient use of the lands, without delay on either side; and that the performance of that exchange may be considered as corroborating the efficacy of other acts of part performance, if not sufficient of themselves.

We think upon principle, and the preponderance of testimony, the deceee was equitable.

Affirm.