CITY OF ST. CHARLES v. STOOKEY.

(Circuit Court of Appeals, Eighth Circuit. June 11, 1907.)

No. 2,508.

1. CONTRACTS—ACTION FOR PRICE—RIGHT OF ACTION—SUBSTANTIAL PERFORMANCE.

An action for the contract price may be maintained either upon the contract, upon an allegation of performance, or upon a quantum meruit, where one has substantially though not completely performed his agreement, and the other party has received and retained the benefits of such performance. The other party, however, may recover the damages he has sustained by the failure of the first party to completely perform, either by an independent action before he is sued, or by a counterclaim after suit has been commenced against him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 1549-1557.]

2. SAME—SUBMISSION OF ISSUES.

A count upon the contract and one upon the quantum meruit for the same relief may be submitted to a jury together, under an instruction that there can be but one recovery.

3. WORK AND LABOR—EVIDENCE—ADMISSIBILITY.

In an action on a quantum meruit for the value of the work and materials furnished under a contract partially performed, the latter is evidence of their value.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Work and Labor, § 52.]

4. COURTS—UNITED STATES COURTS—PROCEDURE—VERDICT.

A general verdict on several counts in a complaint and several counterclaims in an answer is sufficient in a national court in an action at law, although several or special verdicts are required in such cases in the courts of the state in which the trial is had.

5. SAME—CONFORMITY TO STATE PRACTICE—STATUTORY PROVISIONS.

The act of conformity (section 914, Rev. St. [U. S. Comp. St. 1901, p. 684]) does not require the courts of the United States to adopt any rule of pleading, practice, or procedure enacted by state statute or announced by the decision of a state court which would restrict their jurisdiction, or unwisely incumber the administration of justice in their tribunals. It only requires conformity "as near as may be."

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 899-910.

Conformity of practice in common-law actions to that of state court, see notes to 5 C. C. A. 594; 27 C. C. A. 392].

6. ARBITRATION AND AWARD—ARBITRATORS—AUTHORITY—TERMINATION.

The power of an arbiter is exhausted by a final award, and he may not subsequently modify, revoke, or annul his finding, or make a new award upon the same issues.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Arbitration and Award, §§ 355-358.]

7. CONTRACTS—PERFORMANCE—CERTIFICATE OF ENGINEER—MODIFICATION.

An engineer empowered by the parties to an agreement to determine when it was completed to his satisfaction, and when 15 per cent. of the

price, which was to be retained until that time, was due, made a final estimate in which he certified that this 15 per cent. was due on January 5, 1903. On November 5, 1903, he made another final estimate, wherein he charged the contractor $5,667.10, which did not appear in his former estimate. *Held*, the power of the engineer to determine that the work was completed and that the 15 per cent. was due was exhausted by his first estimate, and the second was not binding upon the parties.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 1326.]

**8.** MUNICIPAL CORPORATIONS—ACTIONS—CONDITIONS PRECEDENT—PRESENTATION OF CLAIM.

The presentation of a claim to a city is not indispensable to the maintenance of an action upon it, under § 5854, Rev. St. Mo. 1899. The only penalty for a failure to present it is disallowance by the city, and, if the claim is unliquidated, the loss of costs.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 2193, 2213.]

**9.** SAME—GOVERNING BODY—PROCEEDINGS—CONTRACTS.

The legislative body of a city may act by resolution or motion, unless the charter or statute from which it derives its powers requires it to act by ordinance. Sections 5838 and 5846, Rev. St. Mo. 1899 [Ann. St. 1906, pp. 2951, 2955], do not require the passage of an ordinance to extend the time for the performance of a contract with the city, but its city council may grant such an extension by motion or resolution.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 895.]

**10.** PLEADING—ISSUES—EVIDENCE ADMISSIBLE.

The plaintiff pleaded an extension of time to a later date, "to wit November 1, 1902" and then proved its extension "at least sixty days" from September 1, 1902. *Held*, pleading a date under a videlicet does not hold the pleader to the exact date named, and he is not estopped thereby to prove a near but different date.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, §§ 1306, 1311.]

**11.** CONTRACTS—CONSTRUCTION—PARTICULAR PHRASES.

An extension of "at least 60 days" is an extension for an indefinite time not less than 60 days, and gives a reasonable time after the 60 days expire.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 963–968.]

**12.** MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—CONTRACTS—PERFORMANCE—APPROVAL OF ENGINEER.

An engineer was an employé of the city and also an arbiter under a contract between the city and the contractor, empowered to direct the latter to do extra work with the approval of the city council, and to decide all questions which should arise relative to the installation of waterworks by the contractor. After the works had been substantially completed to the satisfaction of the engineer, and had been in the use of the city for three months, a break and leak occurred in the settling basins which rendered them unfit for use. Thereupon, by direction of a committee of the city council, the engineer notified the contractor to repair the basins and to make them water tight, or that the city would do so at his expense. The contractor answered that he was not responsible for the break, and that he would not repair it. *Held*, the engineer was acting as the agent of the city and not as an arbiter in giving the notice, and his letter which contained the notice was not his decision as arbiter, either that the contractor was responsible for the repairs, or that they were extra work under the contract.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Shepard Barclay (Thomas T. Fauntleroy, on the brief), for plaintiff in error.

Fred B. Merrills and Daniel N. Kirby, for defendant in error.

Before SANBORN and HOOK, Circuit Judges.

SANBORN, Circuit Judge. In this case the plaintiff below, Charles A. Stookey, recovered a judgment of $10,695.82, the unpaid balance of the agreed price of the construction of a system of waterworks, which consisted of three settling basins, boilers, pumps, power house, pipes, distribution mains and hydrants, for the city of St. Charles The contract price of the works was about $84,000, and the city had paid the contractor about $75,000, and had taken possession of and was using the works. They had been built under written contracts and specifications, which provided that the contractor should make excavations as directed by the engineer; that the engineer should stake out all work; that the engineer might make alterations in line, grade, form, or dimensions of the work; that the engineer should in all cases, decide all questions which might arise relative to the installation of the plant by the contractor; that his estimates and decisions should be final and conclusive; that the contractor should be responsible for the entire work as a whole until its acceptance by the city; that the settling basins should be filled with water, and should stand until proved to be water tight to the satisfaction of the engineer; that "all leaks, breaks, or defects caused by improper material or workmanship that develop within six months after the plant is accepted by city must be repaired or replaced by contractor; that the contractor shall do such extra work, in addition to his contract, as the engineer may direct in writing, subject to the approval of the council"; that estimates should be made, and 80 per cent. thereof should be paid monthly as the work progressed; that "when contract is completed and tested to the satisfaction of the engineer and all repairs made, 15 per cent. of the contract price will be paid the contractor"; and that the remaining 5 per cent. should be paid, one-half in three months and one-half in six months after the acceptance of the plant by the city, less the amount, if any, due the city for repairs to the plant.

Early in January, 1903, the plant had been constructed and tested to the satisfaction of the engineer, and on January 5, 1903, he made a final estimate, subject to such exceptions as might be taken into account by the committee in charge, in which he certified the full amount of the bid for the three settling basins, to be earned and the 15 per cent. payable when the work was completed to his satisfaction and when all repairs were made, to be due. The committee made certain specifications of defects, which the contractor subsequently proceeded to remedy. They inspected and tested the works, and on January 15, 1903, pursuant to a recommendation of the committee, the city paid the contractor $12,000 on this estimate. On February 9, 1903, the city took and thereafter retained possession of the waterworks system. From time to time, as requested, the engineer stopped leaks in the

basins and made repairs, which he completed before May 20, 1903. About May 25, 1903, a portion of the east wall of two of the settling basins tipped toward the east, and cracked the floor and the ends of two of the basins so that they would not hold water. The city subsequently repaired this break at a cost of $5,667.03, and the meritorious issue in this case is whether the contractor or the city should bear the expense of these repairs. There was evidence, on the one hand, that this break was caused by improper material and workmanship furnished by the contractor, that the floors of the basins were not covered with the specified thickness of cement, so that the leakages through them undermined the east wall and produced the break. On the other hand, there was testimony that this break was caused by the direction of the engineer to locate the east wall so that a portion of it rested upon earth, sand, and silt, and by his direction not to remove this soft material and place the foundation of the wall upon the solid rock below so that the portion of the wall upon this silt and sand settled more than the remainder of the wall and of the basins which rested on solid rock, and that the crack in the basins was caused by this settling. The issue which this evidence presented was submitted to the jury under proper instructions, and they found that the misdirection of the engineer was the real cause of the break, and that it was not produced by the plaintiff's improper workmanship or material. There was sufficient evidence to sustain this conclusion, and in the consideration of the case in this court that must be deemed to be the fact.

The first contention of counsel for the city is that the court erred because it did not instruct the jury to return a verdict for the city. They say: (1) That the contractor agreed that the basins should be water tight; that they were not so, and were unfit for use after May 25, 1903; that the engineer notified him on June 2, 1903, to make them so, and he declined on the ground that their condition was not caused by his improper workmanship or material, and that even if he was right their repair was extra work, which he was required to do by the terms of his contract; (2) that the letter of the engineer of June 2, 1903, was a conclusive determination that the basins were unfit for use; (3) that there are two counts in the petition, one for performance of the contract and the other for the reasonable value of the work and materials furnished, and that as the contractor never fully performed, the city was entitled to a peremptory instruction on the first count at least; (4) that the contract requires the final payment to be made upon the completion of the work on the certificate of the engineer, and six months after the acceptance of the plant by the city, and there was no certificate of completion by the engineer and no acceptance by the city; (5) that the court should not have submitted to the jury the causes of action stated in the first and second counts at the same time; and (6) that the work was not completed within the time specified in the contract. But the contractor substantially performed his agreement, the city took and retained the benefits of his performance, and the court below rightly held and charged the jury that in such a case the contractor may recover the agreed price, less the damages which have resulted to the owner from the former's failure to completely perform. If the repairs made by

the city were caused by improper materials or workmanship, it was entitled to deduct their cost from the portion of the contract price it. owed to the plaintiff; and if these repairs were extra work, for which the city was required to pay by the contract, it suffered little damage by making them itself. In either event, the plaintiff performed the principal part of his contract, and furnished work and material of the agreed price of about $80,000, which the city received and retains, while the damage for his failure to perform, if any, was but a few thousand dollars. Where a contract has been substantially executed, and one of the parties has derived and retains substantial benefits, or has imposed upon the other material losses through the latter's partial performance, the first party cannot rescind the contract on account of the failure of the second party to complete his performance, but the agreement must stand, the first party must perform his part of it, and his only remedy for the failure of the second party is compensation in damages for the breach. It is only when the parties to the agreement can be placed in statu quo that one may rescind and repudiate or defend against an action for the performance of the entire contract on account of the failure of the other to completely fulfill his portion of it. When one has received the benefits of substantial performance by the other without paying the price agreed upon, and he cannot or does not return these benefits, it is manifestly unjust to permit him to retain them without paying, or doing as he promised. In order to avoid such an injustice, the party who has substantially performed may enforce specific performance of the covenants of the other party, or may recover damages for their breach upon an averment of performance, without proof of complete fulfillment, while the other party, on the other hand, may by an independent action before he is sued, or by a counterclaim after commencement of a suit against him, recover from the first party the damages which he has sustained by the latter's failure to completely fulfill his covenants. German Sav. Inst. v. De La Vergne Refrig. Mach. Co., 70 Fed. 146, 150, 17 C. C. A. 34, 38; 1 Chit. Pl. 16th Am. Ed. 333; Illinois Trust & Sav. Bank v. Arkansas City, 76 Fed. 271, 289, 22 C. C. A. 171, 189, 34 L. R. A. 518; Springfield Milling Co. v. Barnard & Leas Mfg. Co., 81 Fed. 261, 266, 26 C. C. A. 389, 394; Kauffman v. Raeder, 108 Fed. 171, 178, 47 C. C. A. 278, 285, 54 L. R. A. 247; Thomas China Co. v. C. W. Raymond Co., 135 Fed. 25, 67 C. C. A. 629; Barbee v. Willard, 4 McLean, 356, 360, Fed. Cas. No. 969; Hunt v. Silk, 5 East, 449; Hammond v. Buckmaster, 22 Vt. 375; Brown v. Witter, 10 Ohio, 143; Dodsworth v. Iron Works, 13 C. C. A. 552, 557, 66 Fed. 483; Swain v. Seamens, 9 Wall. 254, 272, 19 L. Ed. 554; Beck v. Bridgman, 40 Ark. 382, 390; Andrews v. Hensler, 6 Wall. 254, 258, 18 L. Ed. 737; Conner v. Henderson, 15 Mass. 319, 321, 8 Am. Dec. 103; Teter v. Hinders, 19 Ind. 93; Howard v. Hayes, 47 N. Y. Super. Ct. 89, 103; Welsh v. Gossler, 47 N. Y. Super. Ct. 112; Underwood v. Wolf, 131 Ill. 425, 23 N. E. 598, 19 Am. St. Rep. 40; Brown v. Foster, 108 N. Y. 387, 15 N. E. 608; Vanderbilt v. Iron Works, 25 Wend. (N. Y.) 665; Lyon v. Bertram, 20 How. 149, 153–155, 15 L. Ed. 847; Clark v. Steel Works, 3 C. C. A. 600, 53 Fed. 494, 499; Voorhees v. Earl, 2 Hill (N. Y.) 288, 294, 38 Am. Dec. 588; Burnett v. Stanton,

2 Ala. 181; Churchill v. Holton, 38 Minn. 519, 38 N. W. 611; Tread-well v. Reynolds, 39 Conn. 31; 21 Am. & Eng. Enc. Law, 557, note 2. As the plaintiff substantially performed his contract, and the evidence failed to prove conclusively that the damages which the city sustained from his failure, if any, to complete it equaled the balance of the contract price due to him, the court properly refused to instruct the jury to return a verdict for the defendant on the ground that he had not fully performed his agreement.

Nor was the court in error when it charged that if the jury found the break of May 25, 1903, was caused by improper materials or workmanship "the plaintiff would have to bear the loss resulting therefrom," and refused to instruct them that in the event of such a finding the plaintiff could not recover on the first count in the petition, wherein the plaintiff averred performance of the contracts and prayed for a recovery of the contract price. Counsel challenge this ruling, and cite Timber Co. v. M., K. & T. R. Co., 180 Mo. 463, 79 S. W. 1130, and Lumber Co. v. Snyder, 65 Mo. App. 568. But an action for the purchase price or for the contract price under an averment of sale or of performance may be maintained in the federal courts by one who has substantially but not completely fulfilled his agreement when the purchaser or the party with whom he has contracted has received and retained the benefits of his performance, and he is not driven to an action on the quantum meruit to obtain relief. The amount of his recovery may indeed be restricted to the agreed price, less the damages sustained by the defendant from his failure to completely perform his contract, but he may, nevertheless, recover in his action upon the contract. Springfield Milling Co. v. Barnard & Leas Mfg. Co., 81 Fed. 261, 262, 266, 26 C. C. A. 389, 390, 394; Kauffman c. Raeder, 108 Fed. 171, 179, 47 C. C. A. 278, 285, 54 L. R. A. 247; H mmond v. Buckmaster, 22 Vt. 375, 379, 380; German Sav. Inst. v. De La Vergne Refrig. Mach. Co., 70 Fed. 146, 151, 17 C. C. A. 34, 39; Beck v. Bridgman, 40 Ark. 382, 390, and authorities cited supra.

In the light of the rules of law to which we have now adverted, the two counts of the petition did not differ in legal effect. The first was that the plaintiff had performed the contracts, and had thereby become entitled to recover the agreed price, $84,239.62, less $75,016.16, which the city had paid, or the sum of $9,223.46 and interest. The second was that the plaintiff had furnished materials and performed labor under the contract which were worth, and for which the city had agreed to pay, $84,239.62, that it had paid $75,016.16 on account thereof, and that $9,223.46 and interest remained due. Under the second count the contracts were evidence of the reasonable value of the work and materials furnished (Adams v. Burbank, 103 Cal. 646, 37 Pac. 640; Scott v. Congdon, 106 Ind. 268, 6 N. E. 625; Jenney Electric Co. v. Branham, 145 Ind. 314, 41 N. E. 448, 33 L. R. A. 395; Courcelle v. Lausans, 3 La. 361; Kugler v. Wiseman, 20 Ohio, 369), and the plaintiff had the right to prove and recover the amount due him for his substantial performance of the contract under either count of his petition. The court committed no error prejudicial to the city, therefore, in submitting the case to the jury as it did under both counts,

with an instruction to the effect that, if they allowed a recovery under the first, they could not do so under the second, and vice versa. If the plaintiff proved a substantial performance of the contract, as he might lawfully do under either count, and the defendant failed to offset the amount due him therefor by proof of damages for the plaintiff's failure to perform, he was entitled to a single recovery of the amount due him, and the action of the court gave him no more.

Counsel argue, and cite decisions of the courts of Missouri in support of their contentions: That under a count for performance of a contract substantial performance is insufficient to warrant a recovery (Eyerman v. Association, 61 Mo. 489; Hayes v. Bunch, 91 Mo. App. 467); but the rule in the federal courts and the more reasonable and general rule is otherwise, as the decisions cited above demonstrate. That a recovery from the city on the quantum meruit is inadmissible in Missouri (Heidelberg v. St. Francois Co., 100 Mo. 74, 12 S. W. 914); but the recovery in this case is the price agreed upon by the written contracts of the city, and while the second count of the petition was in form an action upon the quantum meruit, it was in fact an action for the contract price, because it counted on an averment that the materials and work were reasonably worth that price. That in view of the fact that there were two counts in the petition and several counterclaims a general verdict was erroneous (Hickman v. Byrd, 1 Mo. 495; Allison v. Darton, 24 Mo. 343; Boyce v. Christy, 47 Mo. 70); but the form of the verdict in the federal court is not dictated by the state practice, and a general verdict is permissible in the discretion of the court in an action at law unless the statutes of the United States otherwise direct (Railway Co. v. Horst, 93 U. S. 291, 299, 300, 23 L. Ed. 898; Association v. Barry, 131 U. S. 100, 119, 9 Sup. Ct. 755, 33 L. Ed. 60; O'Connell v. Reed, 56 Fed. 531, 536, 5 C. C. A. 586, 592; Times Pub. Co. v. Carlisle, 36 C. C. A. 475, 484, 94 Fed. 762, 771). That the verdict is erroneous because it rests on two counts which plead inconsistent causes of action, one upon an express and the other upon an implied contract, and the verdict fails to show upon which cause of action it rests (Mooney v. Kennett, 19 Mo. 551, 61 Am. Dec. 576; Pitts v. Fugate, 41 Mo. 405; State v. Dulle, 45 Mo. 269; Bigelow v. Railway Co., 48 Mo. 510; Cole v. Armour, 154 Mo. 333, 55 S. W. 476); but the causes of action pleaded were not inconsistent, but were for the same work and materials, furnished under the same contracts and for the same amount, the one as the agreed price and the other as the agreed value of the work and materials.

The federal act of conformity (section 914, Rev. St.) does not require the practice, pleadings, forms, and modes of proceeding in the national courts to conform exactly to those of the courts of the states, but only "as near as may be." It was not the intention of Congress to require by the passage of this act the adoption by the circuit courts of any rule of pleading, practice, or procedure enacted by state statute or announced by the decision of a state court which would restrict the jurisdiction of the federal courts, or prevent the just administration of the law in the light of their own system of jurisprudence, as defined by their Constitution as tribunals and the acts of Congress

relative to that subject. On the other hand, that act expressly reserves to the judges of those courts the power, and hence imposes upon them the duty, to reject any statute, practice, or decision that would have such an effect. The application to this case of the rules here invoked, which counsel claim have been adopted by some of the courts of Missouri, would sacrifice the merits of the issues which this lawsuit presents to forms of procedure, would impede the administration of justice, and fly in the face of the act of 1789 (Rev. St. § 954 [U. S. Comp. St. 1901, p. 696]), to the effect that no judgment or other proceeding in a civil cause in any court of the United States shall be arrested or reversed for any defect or want of form.

Counsel insist that there was no certificate of final completion of the work showing a balance payable at once except that of November 5, 1903, which was made after the city repaired the break, and was rejected by the court, and that for that reason there was no proof that any amount which has not been paid ever became due under the contract. But the agreement provided that, when the system was completed and tested to the satisfaction of the engineer, and when all repairs were made, 15 per cent. of the contract price should be paid to the contractor. On January 5, 1903, the engineer made a final estimate, subject to such exceptions as might be taken into account by the committee in charge, which showed the 15 per cent. to be due, and on January 15, 1903, after the waterworks had been inspected and tested by the committee, a part of this 15 per cent. was paid by the city upon its recommendation. The engineer could not have certified lawfully that this 15 per cent. was due unless the contract had been completed to his satisfaction and all repairs had been made. This estimate disclosed a balance of $15,905.68 then due, and, in addition, the 5 per cent. retained to be paid three and six months later, as provided by the contract. The sentence, "This is to be considered as a final estimate, with such exceptions as may be taken into account by the committee in charge," which appears at the head of the estimate, is found in the same words in the later certificate of November 5, 1903, which was issued after the city had repaired the break, and it fails to overcome the persuasive facts that the estimate of January 5, 1903, was for the entire work; that it showed the 15 per cent. to be due; that $12,000 was paid upon it on the recommendation of the committee of the city council 10 days later, after an inspection and test of the works; and the evidence that the contractor remedied the defects suggested by the committee before the break of May 25, 1903. Here was ample evidence to sustain the finding of the jury that the engineer made his final certificate showing the work completed and an amount then payable on January 5, 1903.

In June, 1903, the engineer notified the contractor to repair the break of the preceding month. He answered that this break was not caused by improper materials or workmanship; that he was not responsible for it; that he would not repair it; that he had completed his contract; and he demanded payment for his work, pursuant to the final estimate of January 5, 1903. Thereupon the city repaired the break at a cost of $5,667.10, and on November 5, 1903, the engineer made another final estimate, in which he charged the contractor with this amount, and

disclosed a balance of $2,392.43 due him. One of the alleged errors specified is that the court refused to instruct the jury that this latter estimate was conclusive upon the parties, and that the plaintiff was bound thereby; but, as we have seen, there was substantial evidence to sustain the finding which the jury must have made that the engineer made his final estimate on January 5, 1903, and thereby found, pursuant to the terms of the contract, that it had been completed, that the work had been tested to his satisfaction, and that all repairs had been made. The power of the engineer to determine that the work had been completed was derived from the contract. The contract required him to make a final estimate as soon as he was notified of the completion of the work, and to certify that 15 per cent. was due whenever the contract was "completed and tested to the satisfaction of the engineer and all repairs made." The authority to determine that this work was complete was not a continuing power. He could not find and certify that it was finished and that the 15 per cent. was due on one day, and then lawfully revoke that certificate and find to the contrary on the next day, and so on ad infinitum. He was the arbiter whom these parties had empowered to determine whether or not the plaintiff's work was complete and his 15 per cent. was due, and when he had once found and certified that the contract was performed and that this percentage was due, his power to determine that issue was exhausted. The power of an arbiter is gone after his final decision, and he may not subsequently modify, revoke, or annul it, or make a new award upon the same issues. 1 Am. & Eng. Enc. Law, 689; Edmundson v. Wilson, 19 South. 367, 369, 108 Ala. 118; Flannery v. Sahagian, 31 N. E. 319, 134 N. Y. 85. The final estimate of January 5, 1903, exhausted the power of this engineer to determine when the 15 per cent. fell due, and when, under the terms of the contract, it was completed, and the works were tested to his satisfaction, and his later estimate and certificate of November 5, 1903, did not conclusively adjudge or determine that question against the plaintiff.

Another reason urged why the court should have directed a verdict for the defendant is that the contract was not performed within the time limited for its execution. The answer is that it was substantially performed within that time, and that the failure to complete it within the time fixed, in view of the fact that the city received and retained the benefits of the performance, constituted no bar to a recovery of the agreed price of the work. It sounded in damages only, to be recovered by counterclaim or independent action.

It is contended that the court should have instructed the jury to return a verdict for the city, because there was no proof of a proper presentation of the plaintiff's claim to the city authorities, in accordance with the provisions of section 5854 of the Revised Statutes of Missouri, 1899 [Ann. St. 1906, p. 2959], before this action was brought. But while that section commands the presentation to a municipality of claims against it itemized and verified, the only penalty it denounces against the claimant for a failure to so present them is the disallowance of the claim by the city, and a prohibition of the recovery of costs upon it if it is unliquidated. It fails to make the presentation of the claim a prerequisite to the maintenance of an action upon it. Hence the

failure of the plaintiff to itemize, verify, and present his claim to the city constituted no defense to the cause of action he presented to the court.

The contracts provided that the waterworks should be completed on July 1, 1902, and that, if the contractor failed to finish the work "to the acceptance of the engineer within the time specified," then there should be withheld from money due him in his final estimate a sum of money equal to $50 per day for each day of such delay. The plaintiff alleged that the city extended the time for the completion of the work to a later date, "to wit, November 1, 1902." The city denied this averment, and set up a counterclaim for $14,000 on account of delay beyond the time fixed for completion, and the plaintiff in his reply alleged that the work was finished and was by the engineer adjudged to have been completed substantially in accordance with the requirements of the contract on, to wit, January 5, 1903. On June 6, 1902, the city council passed a resolution that an extension of time for the completion of the waterworks until September 1, 1902, be granted. On August 1, 1902, the plaintiff in writing requested the mayor and city council of the city "to extend his time at least 60 days." On September 6, 1902, the committee to whom this letter had been referred recommended to the mayor and council that the extension be granted as prayed, and the mayor and council passed a resolution that the report be received and approved and that the recommendations therein be accepted. There was evidence that the waterworks were substantially finished on November 1, 1902, that some more requirements were made and fulfilled during that month, and that on January 5, 1903, the engineer after an examination made the final estimate of that date. The city asserts that the court below erred in relation to this matter of time, because it received in evidence the resolutions which granted the extensions, because it did not direct the jury that the defendant was entitled to an allowance of $50 per day upon its counterclaim for the delay between November 1, 1902, and January 5, 1903, and because it instructed the jury that the last extension of at least 60 days granted the plaintiff "the full sixty days and any reasonable time thereafter, not such time as would be substantially a detriment, but a reasonable time thereafter." The objection to the resolutions is that the extensions they purport to give could be granted by the mayor and council by ordinance only, and not by the council by resolutions; and in support of this position our attention is called to section 5838, Rev. St. Mo. 1899 [Ann. St. 1906, p. 2951], and State ex rel. v. Carr, 67 Mo. 38, and State ex rel. v. Carr, 1 Mo. App. 490. The decisions in these cases are to the effect that, when the statute requires the signature of the mayor to an ordinance, or his withholding of it for 10 days without approval as a condition of its validity, a city council cannot validate it by adjourning within the 10 days, and in that way deprive the mayor of his privilege of returning it with his veto for their consideration. No provision is found in section 5838 nor in section 5846, to which counsel for the plaintiff direct attention, which makes an ordinance or any specified method of action of the mayor and council an indispensable prerequisite to a grant by the city of an extension of time to a contractor to complete performance of his agree-

ment with it; and hence the case falls under the general rule that, when the legislative body of a city has authority to take action, and the empowering statute does not require the action to be taken by ordinance, it may be had by the passage of a resolution or a motion. Illinois Trust & Sav. Bank v. Arkansas City, 76 Fed. 271, 286, 22 C. C. A. 171, 185, 34 L. R. A. 518; City of Alma v. Guaranty Sav. Bank, 60 Fed. 203, 207, 8 C. C. A. 564, 568; Ogden City v. Weaver, 108 Fed. 564, 569, 47 C. C. A. 485, 490. The authority to waive or extend the time for the completion of a contract is one of the ordinary powers of a city council, and it may be exercised by motion or resolution or even by acts of the city in pais relating to the work, unless the charter expressly requires an ordinance to effect it. Dillon on Municipal Corporations, § 451. Counsel for the city appear to have been of this opinion in the earlier stages of this case, for they admitted in their pleading the validity of the second contract as amended and modified by a resolution, and the extension of the time for the completion of the waterworks by the resolutions in question until November 1, 1902.

The plaintiff asked, and the city by the adoption of a motion on September 6, 1902, granted him an extension of at least 60 days. The contractor pleaded that this time was extended from July 1, 1902, to a later date, "to wit, November 1, 1902," and that the engineer found and adjudged the work complete on January 5, 1903. The city insists that the plaintiff was estopped by this pleading from claiming that his time was extended beyond November 1, 1902, that the court erred in its declaration that he was granted the full 60 days and a reasonable time thereafter, and that it should have peremptorily instructed the jury that under these pleadings the city was entitled to recover upon its counterclaim $50 per day for the delay between November 1, 1902, and January 5, 1903. But a plea of a date under a videlicet is not an averment of an exact date. It need not be exactly proved to establish the allegation of the pleading (Brown v. Berry, 47 Ill. 175; Paine v. Fox, 16 Mass. 129, 132), and by the same mark it does not estop the pleader from proving a near but a different time. An extension of at least 60 days is an extension for an indefinite time not less than 60 days, and after this extension was granted the contractor might have reasonably inferred, in the absence of subsequent notice to him by the city, that his time would be limited to some definite date, that a reasonable time not less than 60 days was allowed him to complete his undertaking. This was the natural meaning of the words and the true construction of the grant (Roberts v. Wilcock, 8 Watts & S. 464, 470; Stewart v. Griswold, 134 Mass. 391), and there was no error in the rulings of the court here challenged.

Complaint is made because the court refused to give this instruction to the jury:

"The court instructs the jury that the engineer had no power to accept on behalf of the city the entire work, but any acceptance of the work is invalid unless expressed by some official action of the city council or mayor of the city of St. Charles."

But the court charged the jury upon this subject in effect that, if they found that the plaintiff performed the contract on his part, then

it was the duty of the city to accept his work and material in such time after their completion as would allow the defendant a reasonable time to inspect and examine the completed works; that the omission of the acceptance of the works by ordinance, resolution, or formal declaration would not in itself constitute a bar to the plaintiff's recovery; but if they found that the city council appointed a waterworks committee to inspect the work done and materials furnished by the plaintiff; that said committee, after plaintiff claimed to have completed his work under the contract, visited the waterworks, and with the city's engineer and the mayor of the city personally conducted an examination and test of said waterworks, and thereupon expressed their satisfaction with the same as completed and their approval thereof, subject only to certain minor repairs, which were thereafter within a reasonable time corrected by the plaintiff as requested; and that thereafter the city took possession and charge of said waterworks system as satisfactory, and thereafter continued to use it for the use and benefit of its citizens and others entitled to the use of water in the defendant city—then they might find that the defendant city did accept said waterworks as completed in the manner provided by the contract. There was substantial evidence to sustain a finding of the facts hypothetically stated in this instruction. The evidence was undisputed that the city council appointed the committee on waterworks to inspect this system; that, after the plaintiff claimed that the works were completed, this committee, the mayor, and the city engineer, in January, 1903, inspected and tested them, and found them complete, with the exception of some minor defects; that the city paid the contractor $12,000 upon the final estimate of January 5, 1903, after this inspection was made; and that it took possession of and used the works. By the express terms of the contract, the possession and use of the works did not constitute an acceptance. These acts of the city council, of its committee, and of the mayor were not personal or individual acts; they constituted official action of the mayor and of the council, and the question presented by this case was not whether or not the waterworks could be accepted without any official action of the mayor or of the council, but it was what the legal effect of the action they had taken was. For this reason the instruction here requested by counsel for the city was inapplicable to the facts of the case, and there was no error in refusing to submit it to the jury.

Counsel specify as error the refusal of the court to instruct the jury "that the decision of the engineer, Mr. Phillips, in his letter to plaintiff dated June 2, 1903, in regard to the completion of the waterworks plant mentioned in evidence, was conclusive and binding on the plaintiff and defendant." But there was no error here: (1) Because there was no issue or dispute at the trial in regard to the condition of the waterworks plant at the time mentioned in this letter; the engineer there stated that two of the settling basins were unfit for use on account of leaks and cracks, and this fact was conceded at the trial; and (2) because that letter did not constitute an adjudication by the engineer as arbiter, under the agreement, that the defective condition of the basins was caused by improper workmanship or material, or that their repair was extra work, which the contractor was required to perform, and

the request did not ask the court to so instruct the jury. The material statements of the letter were:

"You are hereby notified to at once repair same and render them water tight. You are further notified that, in case you fail to comply with this order within five days, acting under clauses on page 4 of the specifications, the city will have the work done at your expense."

The engineer acted in a dual capacity. He was an employé of the city and he was the arbiter of the disputes of the parties to this contract. They had empowered him "to decide all questions which might arise relative to the installation of the plant." He testified with reference to this letter:

"I was called up there and met the water committee, and they directed me to write him a letter stating he must fix up each and every leak in there so it would be absolutely water tight. While standing in the clerk's office, I wrote out that notice to Mr. Stookey. * * * Q. At whose direction did you say you wrote that to Mr. Stookey? A. My recollection is, members of the water committee."

In the light of this evidence, the court below rightly held that in writing this letter the engineer was the agent of the city, stating its claim, and that he was not the arbiter of the contracting parties, deciding the crucial question in this case, which does not seem to have been presented to or considered by him—the question whether or not the break of May 25, 1903, was the fault of the contractor or of the employés of the city—and hence that his letter did not determine that issue.

The questions presented in this case are numerous, and they have been discussed by counsel after much research, with great care, learning, and ability. Our conclusions upon some of them have not been reached without some doubt, but after a deliberate consideration of each of them our judgment is expressed in this opinion, and it is that there was no prejudicial error in the trial of this case below, and that the judgment there rendered must be affirmed. It is accordingly so ordered.