### In re A. W. COWEN & BROS., Inc.

(Circuit Court of Appeals, Second Circuit. April 5, 1926.)

No. 282.

1. Sales ⬤⟳166(5)—Tender of unmerchantable silks sold by sample was not delivery under contract of sale, and referee's allowance of claim with percentage deduction for imperfections and defects was not justified (Personal Property Law N. Y. §§ 96, 97; Laws N. Y. 1911, c. 571).

Where silks for use in manufacturing neckties were sold by sample, tender of unmerchantable silks was not delivery within contract, in view of Personal Property Law N. Y. §§ 96, 97, 150, so that referee in bankruptcy, in passing on claim for rejected silks, was not justified in allowing claim with percentage deduction for imperfections and defects.

2. Sales ⬤⟳166(1), 177—Failure of buyer to accept silks conforming to contract was breach, and delivery of silks not meeting requirements of contract was also breach, precluding necessity of acceptance by buyer.

Under contract for sale of silks, contemplating separate deliveries, failure of buyer to accept silks conforming to contract was breach of contract, and such silks delivered as did not meet requirements of contract also constituted breach thereof by seller, precluding necessity of buyer's acceptance.

3. Contracts ⬤⟳294—Rule of strict performance of contract is relaxed only on substantial performance by one party of benefit to other, benefits of which are retained, when recovery may be had, subject to right to recoup damages.

Rule of strict performance in accordance with contract is relaxed only where there has been substantial performance by one party of

benefit to other, benefits of which are retained, in which case recovery may be had, subject to right of other party to recoup damages occasioned by him, or to recover damages in separate action.

**4. Customs and usages ⊙═6, 12(1)—Custom must be certain, and known to persons of reasonable prudence, who dealt with its subject with exercise of reasonable care.**

A custom may have force of law, and furnish standard for measurement of many rights and acts of men; but it must be certain, and must be known to persons of reasonable prudence, who deal with its subject with exercise of reasonable care.

**5. Customs and usages ⊙═8—Evidence of custom or usage will not be permitted to require acceptance of merchandise not answering requirements of buyer as contemplated by contract, contrary to Personal Property Law N. Y. § 150, and Laws 1911, c. 571.**

Since Personal Property Law N. Y. § 150, provides remedy for breach of warranty, evidence of custom or usage is not permissible, so as to require acceptance of delivery of merchandise which did not answer requirements of buyer as contemplated under contract therefor.

**6. Sales ⊙═150(3)—Contract for delivery of silks, providing indefinite time for delivery, held not breached when delivery was tendered within shortest time possible, allowing necessary time for manufacture.**

Under contract for sale of silks providing for delivery in 1919 of sets then completed, and delivery of balance in 1920, failure to make deliveries until February, 1920, *held* not breach of contract, when delivery was made within shortest time possible, allowing time necessary for manufacture; it affirmatively appearing no preference was given to other customers.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of A. W. Cowen & Bros., Inc., bankrupt. An order of the referee, allowing a claim filed by the Brilliant Silk Manufacturing Company, Inc., was confirmed by the District Court, and the bankrupt appeals. Order reversed, and proceedings remitted to the referee, with directions.

Appeal from the District Court for the Southern District of New York. A claim was filed by the Brilliant Silk Manufacturing Company, Inc., for damages for breach of contract. The referee in bankruptcy allowed the claim, and this was confirmed by the District Court. From an order entered affirming the allowance of the claim, this appeal is taken by the bankrupt. Reversed.

David W. Kahn, of New York City, for appellant.

Walter Fairchild, of New York City, for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. A. W. Cowen & Bros., Inc., was engaged in the manufacture of men's neckwear, and the appellee was a manufacturer of silks, when, on August 14, 1919, a contract was entered into between them for the manufacture, sale, and delivery of silks known as necktie brocade. It provided for 50 sets of six pieces each, or 18,600 yards, "to be delivered in sets as ready. Any sets that can be completed in 1919 to be delivered in 1919. Balance in 1920. Duplicate sets to follow the first sets." The contract further provided:

"*Acceptance of Part Delivery.*—Any delivery or portion thereof not made in accordance with this contract shall not affect any fulfilled parts thereof, nor entitle the buyer to reject subsequent deliveries."

While the contract bore the date of August 14, 1919, it was corrected to its present form on October 10, 1919, and was finally confirmed on October 24, 1919. The merchandise was of special warps; special designs and combinations of colors. It contemplated future delivery of five qualities of 36-inch silk necktie brocades. The first pieces began to come off the looms and were offered for delivery in February, 1920, but at the request of the bankrupt, delivery was withheld until the sets were completed. All the goods required to be manufactured and delivered by the contract were tendered during the year 1920. The 50 sets manufactured were all tendered and under the contract prices amounted to $69,520.50. The first delivery of the sets was tendered in August, 1920, and was refused by the bankrupt because it was claimed they were unmerchantable. The last deliveries were made on December 28, 1920. Others were delivered between these dates, some of which were accepted, and the others refused on the ground of unmerchantability. The contract described the requirements of the merchandise to make it merchantable.

Upon the refusal of the bankrupt to accept deliveries under the contract, the appellee caused the rejected goods to be sold at public auction, where they brought $28,472.71, and it is for the difference—$34,006.71—for which this claim is presented. The appellant claimed that there were imperfections which destroyed, in part, at least, the merchantability of the silks tendered. The question before the referee was the sufficiency of this claim. He held that some of the sets were imperfect, and there was justification for the rejection of some tendered, and made an allowance of 10 per cent. for these imperfections, and allowed the claim for the

balance due. This determination won the approval of the District Judge.

In the contract there is a provision for arbitration before the committee on arbitration of the Silk Association of America. The controversy was presented to that committee, and they found that some of the sets were unmerchantable, and suggested allowances on the purchase price. The proceedings before the committee for arbitration took two forms: First, an offer to adjust the claim before a board of conciliation; and, second, proceeding before the arbitrators. The first failed of fruition, and the second gave an allowance to the bankrupt of approximately $7,000 less than the full amount of the claim, but it failed because the Supreme Court of the state of New York set aside the award, on the ground of misconduct of the arbitrators in refusing to receive proper evidence. Bankruptcy having intervened meanwhile, the matter came before the bankruptcy court.

The evidence in the record discloses that there were defects found in the rejected sets, which were not merely unavoidable weaving defects, so trivial as not to affect the use of the merchandise; but they were very noticeable defects, which made it impossible for the full use of the merchandise as required by the bankrupt in its business, and so affected it as to make it unmerchantable. Indeed, all the witnesses who examined the merchandise here in controversy, including the experts called by the appellee, testified to defects and imperfections appearing which all of them say justified an allowance on the purchase price. They differed as to what the allowance should be and as to the extent of these defects, but the result is that the merchandise tendered by the appellee to the bankrupt was affected, not merely by slight imperfections which might be said to be found in pieces of silk produced by machinery, and which would not affect the use of the goods, but they were real and substantial defects and imperfections, which destroyed to some degree the use of the merchandise by the buyer, and which undoubtedly rendered them unmerchantable, and therefore worth less than the bankrupt had agreed to pay for them. [1] We know of no rule of law which justifies the position taken below that merchandise which is unmerchantable must be accepted by the buyer, if an allowance be granted on the purchase price. The goods tendered are either merchantable or unmerchantable, and if they be unmerchantable, it is not a delivery within the requirements of the contract. There is no applicable rule of law that permits recovery upon the theory of a substantial performance of the contract. Nor would any custom or usage that might exist change the character of the obligations of the parties as contracted. By the terms of the contract, the appellee represented that it had certain patents which it is claimed insured perfection of weave. The sale was one by sample. The representative of the bankrupt, when the contract was made, was furnished with samples from which he made selections, and the appellee was informed that the merchandise was to be used for the neckwear trade.

Section 96 of the Personal Property Law of the state of New York (Laws 1911, c. 571), where the contract was made, provides that, where the buyer explains to the seller the particular purpose for which the goods are required, and it appears that the buyer relies upon the seller's skill and judgment, there is an implied warranty that the goods shall be reasonably fit for such purpose. Further, that where goods are bought by description from the seller, who deals in the goods of that description, there is an implied warranty that the goods shall be of merchantable quality. Section 97 of the same law provides that there is an implied warranty that the bulk shall correspond with the sample in quality, and that the seller of goods warrants by implication that the goods shall be free from any defects rendering them unmerchantable, which would not be apparent on reasonable examination of the sample.

The appellee may not now make claim that the merchandise tendered, and which was rejected, was of like character as the sample, or in full compliance with the contract, in view of the state of the evidence in this record. While the testimony is much in conflict, there is sufficient to require our holding that it should be again reviewed with particular care, to ascertain what sets tendered complied with the contract requirements and those which did not. An eminent textile specialist and expert testified that 40 sets were defective, and he enumerated these by numbers. Seven sets were passed on by this witness, and he testified that he gave each piece of the sets separate examination. Some pieces were produced in short lengths. In addition, there is testimony by silk manufacturers of long and wide experience who reach the same conclusion as to some of the merchandise.

The contract contemplated separate delivery of sets, and it was divisible in that sense. It provided for delivery "in sets as ready," and the set is described as six pieces of the same pattern of different colors. The

terms of payment also indicate such delivery. It provided bills to be payable at 6 per cent. discount seven days after the end of each month of delivery. It was the duty of the referee to examine the testimony, which is full and complete, and from which he could ascertain as a fact which of the sets tendered were merchantable, and which were unmerchantable, under the terms and requirements of the contract. He was not justified, by any rule of law, in disposing of the matter by a percentage allowance on the whole of the merchandise for the imperfections and defects.

[2, 3] As to the sets which were tendered and which answered the requirements of the contract, it was the duty of the bankrupt to accept them, and its failure so to do was a breach of the contract. Such sets as were delivered, which did not meet the requirements of the contract, also constituted a breach thereof, and the bankrupt was not required to accept them. The rule of law applicable here was strict performance in accordance with the terms of the contract. This rule is relaxed only where there has been a substantial performance of the contract by one party which is of benefit to the other, and the benefits of which are retained by it. A recovery may then be had on the theory of substantial performance, as in the case of strict performance, and subject to the right of the other party to recoup damages occasioned by him, by the defects in performance, or to recover such damages in a separate action. St. Charles v. Stookey, 154 F. 772, 85 C. C. A. 494.

The cases referred to by the referee do not support the doctrine of substantial performance, so as to penalize the buyer from rejecting a tender of merchandise which does not answer the warranty implied or provided by the statute. In Burton v. Jennings, 185 F. 382, the sale was pursuant to a contract made in New York, and it was held that the contract was couched in such terms of the art as to make it necessary to ascertain its meaning and to have recourse to the knowledge of the art. The contract there provided for the sale of "sound, square edge, rough, long leaf, yellow pine with no waney stock." The timber was refused by defendant. Evidence of custom in the lumber trade, to learn the meaning of "no waney stock" in such contracts, and as to the percentage of inferior or waney stock which would warrant the rejection of the shipment, was held admissible. The question of the existence of the custom and of the interpretation to be placed on the technical terms used in the contract was held properly submitted to the jury.

[4, 5] This contract was before the Sales of Goods Act in New York, and the decision turned upon the question of admission of testimony to show the meaning of the words in the trade. The terms used in the contract at bar are not ambiguous, nor of doubtful meaning. A custom may have the force of law, and furnish a standard for the measurement of many of the rights and acts of men; but it must be certain, or the measurements by this standard will be unequal and unjust, and it must be known to persons of reasonable prudence, who dealt with its subject with the exercise of reasonable care. Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261; C., M. & St. P. Ry. Co. v. Lindeman, 143 F. 946, 75 C. C. A. 18. If evidence of the so-called custom or usage was permitted here, it would require the acceptance of a delivery of merchandise which did not answer the requirements of the buyer, and he would be obliged to pay all but a very small allowance for the goods, which may be worthless and of no use to him. But the state Sales of Goods Act, in section 150 (Personal Property Law, § 150, as added by Laws 1911, c. 571), provides a remedy for breach of warranty, and no authoritative decision of the state of New York is referred to which points out a custom or usage with limited rights given to the buyer under such section.

[6] The appellant contends that there was a breach of contract in the failure to make deliveries within the time prescribed by the contract, and that therefore the entire contract has been breached. The contract is indefinite as to the deliveries of 1919, but does provide for deliveries of 1920. It is contended that deliveries of some merchandise were made to other customers of the appellee in 1919. The record, however, discloses that no orders were fulfilled which were accepted subsequent to the appellant's order, and it sufficiently appears that the bankrupt did not call for deliveries in 1919. Beyond that, it was physically impossible to make deliveries of any sets during 1919. Four months from October 24, 1919, the time necessary to manufacture, make the first possible deliveries in February, 1920. There was a tender of delivery of pieces prior to February, 1920. Since the terms of the contract provide for deliveries of such sets as are ready in 1919, and the balance in 1920, it was no concern of the bankrupt in what order the appellee made delivery to its customers, as long as it carried out its contract with the appellant. It

affirmatively appears that no preference was given to other customers.

The order will be reversed, and the proceedings remitted to the referee in bankruptcy, with directions to ascertain the facts in conformity with the rules referred to in this opinion, and to report accordingly to the District Court.

Order reversed.