# Francis--Chenoweth Hardware Co.
# v. Gray.

### Statutory Trial of the Right of Property.

1. *Sale of property to be appraised; when title passes.*—Where a stock of goods is sold in payment of a debt, the value of the goods to be determined by an inventory to be thereafter taken, and any difference in the value of ths property sold, and the debt to be made good to the proper party the title to said goods passes to the purchaser immediately upon their delivery to him; and the levy of an attachment, sued out by a creditor of the seller, upon said goods before the completion of the inventory does not affect the purchaser's title.

[Francis–Chenoweth Hardware Co. v. Gray.]

APPEAL from the Circuit Court of Tallapoosa.

Tried before the Hon. N. D. DENSON.

The appellant sued out an attachment and caused it to be levied on a stock of goods as the property of defendants in attachment, Payne Bros. William Gray interposed a claim to them under the statute, and the trial below was between the plaintiff in attachment and the claimant, on issue joined on the allegation of the plaintiff, that the goods levied on were the property of the defendants in attachment.

The evidence showed, without conflict, that Payne Bros., the owners of the stock of goods, were indebted to the plaintiffs and other creditors, at the time of the levy of said attachment, in a sum exceeding $4,000; that several of their creditors were insisting on the payment of their claims; that in addition to the indebtedness above referred to, defendants owed The Tallapoosa County Bank $3,252.50, evidenced by five notes payable at said bank, four of which were past due, and the other for $745.50 was not due until the 15th December, thereafter, 1891, and that on each of said notes, William Gray and J. T. Payne—the former the uncle, and the latter the brother of defendants—were endorsers.

The sheriff testified that he made the levy at night, about 9 o'clock; that the store was closed up and when he knocked for admittance, the door was not immediately opened, but it was finally opened by Andrew Payne, one of the firm, when he found several persons engaged in taking an inventory of the goods, and among those present, were the Payne Brothers; that an inventory of about one-third of the goods had been taken when he entered and made the levy; that Mr. Corprew told him, that the goods belonged to claimant, asked him for his authority and he showed him the attachment, and Corprew told him, that the goods belonged to claimant, and that they were making an inventory for him; that witness took an inventory and they aggregated in value at cost prices, with 10 *per cent.* added, to something over $4,000, and were worth, in his opinion 80 cents in the dollar.

William Gray, the claimant, testified that he was being pressed that day—the 4th of December, 1891—by the bank for the payment of the four notes on which he was indorser for defendants, and he sought an interview with them and insisted upon their paying them, and

Andrew Payne told him they had no money, but proposed to claimant, that if he would pay. said bank notes including the one not due, they would sell him their stock of goods in settlement of the amount so paid for them, to which proposition claimant consented, and purchased the stock of goods from said Payne in settlement of the debt; that there was disagreement between them as to the value of the stock, said Andrew contending the goods were of value greater than the debt, and claimant, that they were not of value sufficient to pay the debt, whereupon witness and defendant agreed that each of them should select a man as appraiser, to fix the price of the goods, and that if under the appraisement of these two, the value of the goods should exceed the amount to be paid by the witness to the bank, the overplus should remain as the property of the defendants, but, if they should fall short of that amount, then the defendants were to make good the shortage, by the transfer of notes and accounts due to them by customers; that pursuant to this agreement, witness selected C. M. Corprew and defendants selected W. C. Stone as their appraisers, and witness and said Payne then went to the bank, and there in the presence of its cashier, stated to him · the terms and details of their agreement as above stated; and after ascertaining the exact amount of said five notes, the witness, at that time, or shortly afterwards, drew his check on said bank for that amount and delivered the same to the cashier in payment of said notes; that he then had more than the amount for which the check was drawn, to his credit in the bank; that said check was accepted and charged to his account in payment of said notes, which were delivered to him. The witness further testified, that at his request, the said Corprew, and at the request of the defendant, Andrew Payne, the said Stone and others, who were to assist them as clerks, together with the witness and T. J. Wright, the cashier of the bank, assembled at the desk in the business house of defendants, and there the witness and defendant, Andrew Payne, stated to said appraisers the details of their agreement touching the sale of the goods, and told them that Payne Bros. had sold claimant the stock of goods in payment of the debt, and that Corprew and Stone, as arbitrators, were to fix the price on the goods, and that he, claimant, then took charge of the goods, and requested Andrew

[Francis–Chenoweth Hardware Co. v. Gray.]

Payne to deliver the key to the store to Corprew for claimant, which Payne did, and then claimant left the store and did not return until attracted by the efforts of the sheriff to gain admittance to the room for the purpose of levying this and other attachments on the goods. He further testified, that he was to have the stock of goods for $3,-252.50, the sum paid by him to the bank for defendants. Witness also testified, that in his opinion, the goods were not worth more than 65 cents in the dollar, and that when the appraisers completed their inventory and appraisement, it amounted to $2,600, only, or $600 less than the amount he paid for them, and Payne Bros. did not get any of the goods back.

The defendant, Andrew Payne, being examined, testified in substance to the same things as were stated by claimant in his testimony, as to what occurred between them as to the details of the sale, what occurred at the bank and at the store. Said Corprew also testified substantially, to what occurred at the store, the same as claimant did in his testimony. All three expressed their opinion that the goods were worth only $2,600, or 65 cents in the dollar, and this was a fair value for them.

Upon this evidence, the plaintiff, after the court had given its charge to the jury, requested the court to charge, that, "If the jury believe the evidence, they will find the issue in favor of the plaintiff," which charge the court refused to give, and the plaintiff excepted. The refusal of the court to give this charge, is the only error assigned.

H. J. GILLAM, for appellant.—1. The appellant was entitled to the general affirmative charge, since, at the time of the levy of the attachments, the contract of sale to the claimant was merely executory, and no title had vested in the claimant. Where there is a sale of personal property, if it appear from the acts and conduct of the contracting parties that anything remains to be done before delivery to the purchaser such as ascertaining the price, or individualizing the subject matter of the sale, no title passes until such facts are fixed.— *Warten v. Strane*, 82 Ala. 311; 2 Addison on Contracts, (Morgan's Ed.), § 568; 1 Benj. on Sales, 323–391 and 396; *Wilkinson v. Williamson*, 76 Ala. 168; *Blackwood v. Cutting Packing Co.*, 9 Amer. St. Rep. 203; *Love v. State*, 6

[Francis-Chenoweth Hardware Co. v. Gray.]

Amer. St. Rep. 234; *Ib.* 538; *Fry v. Mobile Sav. Bank*, 75 Ala. 474.

· HENRY A. GARRETT, *contra.*—The sale of the stock of goods was complete, and the title thereto vested in the claimant before the levy of the plaintiff's attachment.— *Shealy v. Edwards*, 73 Ala. 176; *Townsend v. Brooks*, 76 Ala. 308; *Aderholt v. Embry*, 78 Ala. 185.

HARALSON, J.—The rule is too well settled, to require further discussion, that the title to personal property may and will pass to a vendee, without fixing an absolute price, if the circumstances attending the transaction satisfactorily show that such was the intention of the contracting parties. And, if the articles sold, were to be afterwards weighed or measured, so as to adjust and fix accurately the price to be paid, and it is clear from the terms of the contract, that the parties intended that the sale should be complete before the weighing or measuring should take place, the title to the property will be held to have passed before this was done. An actual delivery of the property sold, such as the evidence, without conflict, establishes was done in this case, manifests an intention of the parties to effect a completed sale, and the inventory provided to be afterwards taken, must be held to have had reference to the adjustment of the price, without the performance of which it was not completed, and not as a part of the contract of sale. So, the title passed at once; and, if, for any reason, the inventory had not been afterwards taken, and the parties could not agree on the price, such happenings, as we have held, would have made no difference in the character of the transaction.—*Foley v. Felrath*, 98 Ala. 176; *Greene v. Lewis*, 85 Ala. 221; *Wilkinson v. Williamson*, 76 Ala. 168; *Shealy v. Edwards*, 73 Ala. 175; *Allen v. Maury*, 66 Ala. 10.

There was no error in the ruling of the court below.

Affirmed.