## LA GRANGE GROCERY CO. v. LAMBORN & CO.

(Circuit Court of Appeals, Fifth Circuit. October 18, 1922.)

No. 3919.

1. **Sales** ⬅️384(2)—**Buyer's breach of contract occurred on date on which seller gave buyer notice that failure to give shipping instructions would constitute breach.**

   Where contract gave seller the right to fix the particular dates of shipment within specified periods, and seller on a particular date notified buyer that it claimed the right to make immediate shipments and asked for shipping directions, and on a subsequent date notified buyer that its failure to give shipping instructions within 48 hours would constitute a breach of the contract, the breach of the contract, as respects damages, occurred on the subsequent, and not on the prior, date.

2. **Contracts** ⬅️10(4)—**Contract held not unilateral.**

   Contract for sale of a specified number of barrels of sugar, deliverable one-third every two months, containing the clause: "Terms: Cash on delivery less 2%, or cash in seven days less 2%. Terms and withdrawals subject to the approval of sellers' credit department"—*held* not to render the contract unilateral as against contention that no sugar could be furnished without approval of seller's credit department, since the contract obligated seller to sell the specified number of barrels, notwithstanding the quoted clause, which referred, by use of word "withdrawals," to the taking out or ordering out of some amount of the sugar less than the whole amount then deliverable under the contract.

3. **Contracts** ⬅️153—**Construed in favor of mutuality.**

   A contract will be given that construction which will uphold it as against the objection of lack of mutuality.

   In Error to the District Court of the United States for the Northern District of Georgia; Samuel H. Sibley, Judge.

   Suit by Lamborn & Co. against the La Grange Grocery Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

B. J. Mayer, of La Grange, Ga., for plaintiff in error.

A. B. Lovett and Hitch, Denmark & Lovett, all of Savannah, Ga., for defendants in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. Lamborn & Co. (hereinafter styled plaintiffs) brought suit against the La Grange Grocery Company (hereinafter styled company), to recover on a contract made June 4, 1920, by which said company purchased from plaintiffs 450 barrels of standard fine granulated sugar on the basis of 26 cents per pound f. o. b. Savannah Refinery, Port Wentworth, Ga., shipments to be made one-third during June or July; one-third during August or September; one-third during September or October, if possible. Particular dates of shipment, within said periods to be at sellers' option. Assortments must be furnished when called for by sellers. The contract provided:

"Terms: Cash before delivery less 2%, or cash in seven days less 2%. Terms and withdrawals subject to the approval of the sellers' credit department."

Sugar to the amount of 150 barrels was furnished in June, 1920. In July, 1920, said plaintiffs requested the company to furnish shipping instructions and assortments for the next 150 barrels, and thereafter repeated this request several times. On August 28th plaintiffs requested said company to furnish shipping instructions and assortments covering the last 150 barrels called for by said contract. The company at no time furnished the instructions or assortments requested.

On September 18th plaintiffs wrote said company, calling its attention to the provision of said contract giving to sellers the right to fix the particular dates of shipment within the periods named therein, electing to then ship all the remaining sugar, and asking the company to give assortments and shipping instructions. No reply was made to this, and on September 23, 1920, plaintiffs repeated their notice and demand for assortments and shipping instructions, advising said company that further delay would constitute a breach of said contract and render the company liable for damages, and that plaintiffs would hold the company liable for damages and resell the sugar for its account and at its risk, holding it for any difference between the contract price and that obtained on resale. Receiving no reply, on September 27, 1920, plaintiffs wired said company by night letter, calling attention to its failure to furnish assortments and shipping instructions, and that, unless it furnished assortments and ordered out said sugar within the next 48 hours, plaintiffs would treat the contract as broken, sell the sugar for the company's account, and hold it for the difference between the contract price and that realized on resale, as well as any other loss or damage sustained through said breach of contract.

Twenty-one barrels of said sugar were subsequently furnished by plaintiffs to said company under an agreement that it was without prejudice to the existing rights and relations between the parties as to the remaining 279 barrels. At different dates between October 19 and

November 27, 1920, inclusive, plaintiffs sold said sugar and notified said company of said resales. Said company denied that it was bound by the same.

Plaintiffs' petition contained two counts. The first sought to recover the difference between the contract price of said 279 barrels and the amount realized on the resale thereof; the second count sought to recover the difference between the contract price and the market price of said sugar on September 27, 1920. Said petition set out the contract. The company by demurrer set up that the contract sued on was unilateral and unenforceable. Its answer to the first count denied the construction of the contract alleged by the plaintiffs, and its binding effect, or that it was bound by the resales made by the plaintiffs, alleging that, if said resales had been made in compliance with law, the difference in contract price and amount realized by resale would not have exceeded the sum of $2,500. In answer to the second count, it denied the construction alleged by the plaintiffs of said contract or its binding effect, that the market price alleged was much greater than alleged by plaintiffs, that the plaintiffs had notified said company that it claimed it had breached said contract long prior to September 27, 1920, and that plaintiffs had elected as their remedy for said alleged breach to resell said sugar, and its only remedy, therefore, was to recover by pursuing that remedy.

The court overruled said demurrer. It denied an oral motion to require plaintiffs to elect between the two counts of their petition. In its charge, however, the court submitted to the jury the question of fact whether the plaintiffs had made any resales as alleged, which were binding on the defendant company, and told them that they would consider the second count only in the event that the truth of the first count was not sustained by a preponderance of the evidence, and that if they found against the contention of the first count the verdict would be on the second count. The jury found for the plaintiffs under the second count in the sum of $11,718, with interest from September 27, 1920.

The plaintiff in error in its brief relies on two assignments of error; conceding that the other questions raised are concluded against it by the decision of this court in Goff Co. v. Lamborn & Co. (C. C. A.) 281 Fed. 613. The first error insisted on in the brief for plaintiff in error is that the court erred in holding that the breach of said contract occurred on September 27, and not on September 18, 1920, on which first date the market price was greater than on September 27.

[1] We do not think that any breach of the contract was claimed by the plaintiffs until the telegram of September 27th. The letter of September 18th merely contained a notice that plaintiffs claimed the right to make immediate shipments according to shipping directions and assortments to be furnished by the company. While that of the 23d called attention to the fact that a failure to give shipping instructions and assortments would constitute a breach for which plaintiffs would resell at the company's risk, it reiterated the demand for such instructions and directions so that shipments could be made. No purpose except to ship to the company on its instructions, which were

then requested, were made in any communication until that of September 27th. Then for the first time the definite statement was made that, unless these were given within 48 hours, a breach of the contract would be regarded as having been made. Therefore the court below committed no error in refusing to consider that a breach had occurred on an earlier date. The verdict of the jury was. based on the difference between the contract price and the highest market price shown on September 27th, after which date the market, as shown by the evidence, was always lower.

[2] The remaining error relied on is that the court erred in construing the clause:

"Terms: Cash on delivery less 2%, or cash in seven days less 2%. Terms and withdrawals subject to the approval of sellers' credit department."

The company insisted that the term "withdrawals" covered all of the sugar purchased, and that therefore no sugar could be furnished without the approval of sellers' credit department; that this rendered compliance with the contract optional with the plaintiffs, and made the agreement unilateral. The court construed the contract to mean that the withdrawals referred to meant the taking out, or ordering out, of some amount of the sugar bought, less than the whole amount due to be delivered at that time, and did not destroy the obligation of the contract for the sale of 450 barrels, one-third of which was to be delivered during June or July, one-third during August or September, and one-third during September or October, and that, so interpreted, the contract was binding.

Evidence was offered on the part of the company, seeking to prove that the word "withdrawals," as used in the contract, was well understood by the sugar trade and covered all sugar mentioned therein. The testimony of the witnesses offered, in our opinion, failed to show any such definite meaning as understood by the sugar trade. We think the contract, taken as a whole, was not ambiguous, and the testimony offered might well have been rejected; that the court therefore was correct in himself construing the contract, and in holding that the effect of this clause was not to destroy its mutuality. The contract stated that a definite quantity of sugar was sold by the plaintiffs to said company, each one-third of said amount to be delivered within certain periods. There are provisions in the contract by which parts of these one-thirds might be withdrawn during said period; likewise, the terms contemplate one of two methods of payment.

[3] A contract will not be construed so as to destroy the same, where there is another legitimate construction which will uphold it. "So a contract should be construed in favor of mutuality." 13 C. J. 539; Palmer Brick Co. v. Woodward, 138 Ga. 289, 294, 75 S. E. 480; Mill Wood, etc., Co. v. Flint River, etc., Co., 16 Ga. App. 636, 85 S. E. 943. The construction contended for by the company would destroy the contract as a binding obligation; that contended for by the plaintiffs, to wit, that an election of terms specified is with the sellers' credit department, and that withdrawals by buyers during the period specified and before its termination is subject to the approval of sellers' credit department, is entirely consistent with the binding obligation to

sell upon one or the other of said terms, and to furnish absolutely by the expiration of the periods specified for the delivery of each third the entire quantity. We therefore think the court was right in his construction of the contract, and there was no error in the charge construing the same and holding it to be binding.

The judgment of the District Court is therefore affirmed.