## MEMPHIS FURNITURE MFG. CO. v. WEMYSS FURNITURE CO.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1924.)

No. 4000.

**1. Contracts ☜10(4)—Contract held not invalid for want of mutuality.**

A contract for the sale of furniture to be manufactured *held* not invalid for want of mu-. tuality or certainty, because of a provision, "Prices prevailing at time of shipment and subject to our ability to ship," where it was shown that the parties had previously dealt under similar contracts and that the provision respecting shipment was because of the uncertainty at the time of obtaining and keeping the required skilled labor for the manufacture, which was understood by the buyer.

**2. Sales ☜1(3)—Contract need not directly fix price.**

To constitute a sale, the price need not be definitely ·fixed at the time the sale is effected, if the contract contains express or implied ·provisions by which it may be rendered certain.

**3. Contracts ☜153—Construed in favor of mutuality.**

A contract will be construed in favor of mutuality, and given that construction which will make it valid and binding, instead of a construction which would make it void and unenforceable.

**4. Appeal and error ☜1068(4)—Contradictory instructions held not prejudicial.**

Inconsistent and contradictory instructions are in general ground for reversal, but where they related to the measure of damages, and the verdict of the jury was manifestly based on the theory of the plaintiff in error, they were not prejudicial.

In Error to the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

Action· at law by the Wemyss Furniture Company against the Memphis Furniture Manufacturing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The Wemyss Furniture Company, hereafter called the plaintiff, recovered a judgment against the Memphis Furniture Manufacturing Company, hereafter called the defend-

ant, for breach of contract. Reversal of such judgment is sought.

About November 1, 1919, Janes, president of defendant, and Miller and Couch, of furniture companies located in Oklahoma and Little Rock, Ark., respectively, visited plaintiff's plant at Evansville, Ind., to buy furniture. Throughout that year the furniture market was very active. Jobbers, to meet the demands of trade, purchased extensively, and prices advanced about every 30 days. The cost of wages and raw material likewise advanced, and difficulty was experienced by manufacturers in obtaining and keeping labor and procuring needed material. Producing companies, on account of labor conditions, were not in a position to produce their normal output. Labor took advantage of the market situation, and jobbers bought to an extent which might be deemed speculative, and, as it sometimes proved, overloaded themselves. The continuing changes in the cost of production necessitated corresponding increases in the selling price of goods, and manufacturers, therefore, including plaintiff, began to accept orders subject to prices in effect on date of shipment at their factories and their ability to ship. The plaintiff and furniture manufacturers generally had oversold, and were not in a position to fill orders promptly, which fact was communicated to Janes and Miller. They were, however, willing to buy, notwithstanding the necessary delay in shipment. Prices were the highest ever known by any of the parties to this litigation, and were still advancing, and were expected to continue to do so, although Janes knew a decline was coming, but did not know when.

Whether the defendant's order given on the November visit to plaintiff's factory was for the styles of furniture known as Nos. 202 and 203, and was substituted for another order given on the same date for styles Nos. 36 and 37, is unimportant, for the reason the contract on which this action is based was for furniture bearing the two first named numbers. The furniture purchased was of a special pattern or design of the Louis XV period, and was made for a New York jobber, H. Herman Manufacturing Company, but in reality for the Hudson Metal Bed Company. A pencil memorandum of the precise quantity of goods desired was made by Miller, who also placed an order for the same styles of furniture, on which memorandum was stamped: "Prices prevailing at time of shipment and subject to our ability to ship. Contingent on whether or not we can get H. Herman Mfg. Co.'s

consent to use designs; if not, selection to be made from regular line." On November 26, plaintiff wrote defendant that it would be in position to take care of defendant on the pattern selected, and, having procured the eastern jobber's consent to the use of the special designs, mailed, on January 8, 1921, to defendant an acceptance of its order, which acceptance, after enumerating the items and styles of articles sold, provided as follows: "Due to the uncertainty of manufacturing, this order is accepted subject to prices in effect on shipping date, and our ability to ship. Your valued order received and entered as above." Thereafter the plaintiff began the fabrication of the goods sold.

On March 22, defendant, on account of the overcrowded condition of its warehouse, requested plaintiff to make no further shipments on the unfilled order for at least 60 to 90 days. Its purpose was to secure a postponement of shipments on both its November order and its order given in the preceding June for goods of the value of about $22,000, which, on account of the excessive number of its orders, the plaintiff had been unable entirely to fill. The plaintiff so understood, and notified defendant that the goods purchased by it were in process of manufacture, and that work on them would be put aside and their shipment delayed, as requested. In response the defendant wrote on March 26 that it was impossible for it to take care of further shipments inside of 60 to 90 days, and again requested no earlier shipments be made. At that time the plaintiff had purchased all the materials (which were then at the highest price) necessary to filling the order and had expended a considerable sum in manufacturing the goods, and, on account of the unusual conditions in the furniture business, had endeavored to complete its work on them as soon as practicable, and could have done so within 40 days. At no time after March 22 did the defendant request the shipment of goods, nor did it at any time complain of want of promptness on plaintiff's part in making and shipping them, or suggest that they were to have been shipped in 60 days from the date of the order, as claimed on the trial.

On May 3, plaintiff's factory was closed by a strike for a period of more than two months, excepting as to some of the shop foremen. At the end of that period manufacturing was resumed with such men as plaintiff was able to get and acquaint with its work, but the number did not exceed more than 60 per cent. of its usual force, until the

day following Labor Day, when the strike ended. On July 8, defendant requested a cancellation of all unfilled orders. The request was granted as to the partially unfilled order of June, 1919, but refused as to the November order. On July 26, defendant wrote plaintiff not to ship further merchandise under any circumstances without order, as it would be unable to take and use further goods. On August 2, plaintiff notified defendant: "If the goods you had ordered had been our regular line, we would not object in the least to either canceling your order or postponing shipment to whatever date would suit your convenience. However, I believe you will agree with me that, when special suites are ordered, and they are cut and made up especially for a merchant or jobber, it is up to such merchant or jobber to take them when ready for shipment. * * * I think Mr. Kerr has explained to you the goods are not entirely ready as yet for shipment, but probably will be in the next three to six weeks." The evidence of both Wemyss and Kerr is that the goods had been manufactured by the last-named date, but had not been wrapped or crated for shipment. On August 3, the defendant wrote: "We are badly overstocked with goods, trade is at a standstill, and to take in further merchandise under these conditions is suicidal and out of the question." It again asked for a cancellation of its orders, notwithstanding the inconvenience and embarrassment which might arise to plaintiff.

On October 8, plaintiff informed defendant that, if it did not accept delivery, the plaintiff would be compelled to hold it responsible for any shrinkage in value between the then prices and what it might realize, if compelled to dispose of the goods in the open market, and suggested that it was willing to meet the defendant half way on any proposition it might care to make that would be fair to the plaintiff. As defendant did not take the furniture which, at plaintiff's price at its factory, after allowing discounts, was of the value of $12,220.42, it was sold by plaintiff, after diligent effort, on December 23, for $5,699. Suit was brought for the difference of $6,521.42, with interest. When a factory is closing out a special pattern, purchasers take advantage of that fact to obtain reduced prices. The plaintiff arrived at the price of its goods (1) by adding a normal profit to the cost; and (2) by considering what goods of a similar grade and quality manufactured by it and by other producers were generally selling for on the market at the time they were ready for shipment. Plaintiff sold other styles in its regular line of goods, No. 36, for instance, at its list price, which were similar and cost very nearly the same as the goods sold to defendant, the difference being in the carvings on the legs. The defendant had previously bought goods of plaintiff subject to prices thus obtained and prevailing at the time of shipment, which prices, fixed in the above stated manner, were paid without complaint.

The price of furniture advanced until about March, 1920, following which the market became dull and prices stationary, or substantially so, until in July or August (the evidence being conflicting as to the precise date), when prices declined. The plaintiff issued a price list on or about March 1, 1920, at which time prices were at their peak. This price list, which did not designate the price of goods of the special pattern purchased by defendant, was continued throughout the year. Prices of furniture of the same grade and quality were substantially the same in the various furniture markets, the variation probably not exceeding 5 per cent. (excepting freight charges), but the cost of production in different factories differed on account of the variation in skill and economies in manufacturing. The plaintiff throughout the year maintained the prices fixed by it on March 1, and effected many sales and shipments at those prices; evidence being offered in its behalf that no decline in the prices of furniture of the special design purchased by defendant had occurred down to October 25. Janes fixed the period of greatest depression in August, September, and October, and stated that his company offered goods at 50 per cent. less than March prices, but that after November 1 there was some advancement in prices. Miller testified that during those months goods could be bought at the reduced price just mentioned.

McLure, Rhodes, and Kahn were dealers in furniture in Memphis. The evidence of McLure is that by September 15, the price had gone off a third, and by October 15 a half; that of Rhodes, that the depreciation was, down to October 25, from 15 per cent. to 50 per cent., and for the higher grades of goods from 25 to 40 or 50 per cent.; that of Kahn, that the decline down to the last-named date was from 25 to 50 per cent., and that much furniture could be bought at from 30, 35, and even 50 per cent. less than list prices. He bought furniture on September 10 at a price which was 27½ per cent. off the price list, and on October 25 at about 28

and 28½ per cent. below such price. During the period of depression some manufacturers sold below their listed prices and some did not.

T. K. Riddick, of Memphis, Tenn. (M. C. Ketchum, of Memphis, Tenn., on the brief), for plaintiff in error.

Lovick P. Miles, of Memphis, Tenn. (Miles, Waring & Walker, of Memphis, Tenn., on the brief), for defendant in error.

Before DONAHUE and MACK, Circuit Judges, and SATER, District Judge.

SATER, District Judge (after stating the facts as above). [1] The defendant insists (1) that the arrangement between the parties under which the goods were to be manufactured and shipped was such as not to constitute a binding contract on the plaintiff, for want of consideration and mutuality—that is to say, the arrangement was such that the plaintiff was at liberty to carry it out or not, as it might elect, and, as it was not binding on both parties, it was not binding on either; and (2) that, if there was a contract, the price was not fixed, but stated to be "subject to prices in effect on shipping date," or "prices prevailing at the time of shipment," which necessarily meant the market price, and not the price which the manufacturer might fix at the time of shipment.

To sustain its position as to the first of these propositions, the defendant relies on a series of cases, of which Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 114 F. 77, 52 C. C. A. 25, 57 L. R. A. 696 (cited with approval in Willard Co. v. U. S., 262 U. S. 493, 43 S. Ct. 592, 67 L. Ed. 1086) is typical. That case arose on the defendant's counterclaim and was determined on the pleadings. A written offer was made, which was nothing but a price list, to deliver between certain dates at stated prices manufactured goods in unnamed quantities. The offer was accepted. There was no averment in the answer that either of the parties paid any consideration or performed any act to induce the contract, except the transmission of plaintiff's offer and of defendant's acceptance. There was no agreement to deliver, or to order and receive, any quantity or amount of the articles specified. It was therefore held that the contract, being for the future delivery of personal property, was void for want of consideration and mutuality, because the quantity to be delivered was conditioned by the will, wish, or want of one of the parties. The familiar rule was recognized that a promise is a good consideration for a promise, that no promise constitutes such a consideration which is not obligatory on the party promising and binding on the promisor, so that the promisee may maintain an action for its breach, and that, if such obligatory feature is wanting, the contract is of no effect and void. The case is readily distinguishable from this.

In the instant case, an order was given for a specified quantity of goods. The plaintiff accepted that order, designating the price to be paid and the rate of discount for prompt payment. Both parties knew the fabrication and shipment of the goods would be delayed on account of the plaintiff's duty to fulfill prior contracts. The time of performance was not fixed. The law, therefore, fixed a reasonable time in which it was to be performed, and what was a reasonable time is a question to be determined in view of all the circumstances which may have been supposed reasonably to have been in contemplation of the parties. Gill Mfg. Co. v. Hurd (C. C.) 18 F. 673; Clark, Contracts, 408; Williston on Sales, § 462. The expression "due to the uncertainty of manufacturing" did not relate to an uncertainty as to intention to manufacture at all, but to the uncertainty as to the time when, in view of prior orders and existing factory conditions as to labor and material, the goods could be produced. Janes and Miller were more anxious to buy than was plaintiff to sell, and were both told the factory was overloaded with orders. Janes knew, from the tardy fulfillment of his June order, that the time of performance would be delayed and uncertain, but the intent and the obligation to perform were present. Nor is the language "subject to * * * our ability to ship" susceptible of the meaning that shipping facilities might not be available for want of a common carrier to serve plaintiff. The allusion to freight charges from Evansville bespeaks the presence of a railroad or railroads in that city, whose services for transportation purposes were obtainable. That language, considered in connection with the uncertainty as to the time of manufacture, means no more than uncertainty as to the time when plaintiff would be able to ship, and is in any event mere surplusage, adding nothing to the preceding language of the contract.

The ruling made in La Grange Grocery Co. v. Lamborn & Co., 283 F. 869, 872 (C. C. A. 5), is helpful. The contract involved in that case for the purchase of a certain quantity of sugar at a fixed price per pound, to be delivered at stated periods, provided:

"Terms: • • • Terms and withdrawals subject to the approval of the seller's credit department." The purchaser defended on the ground that withdrawals covered all the sugar purchased, that no sugar could be furnished without the approval of the seller's credit department, and that therefore the tract was unilateral and without binding effect because compliance with it was optional on the part of the seller. It was held the contract was binding, and not wanting in mutuality, and that the withdrawals referred to meant merely the taking or drawing out of some amount of the sugar bought less than the whole amount to be shipped at any of the specified dates of delivery.

[2] The contract did not specifically state the price to be paid for the goods on delivery. To constitute a sale the price need not be definitely fixed at the time the sale is effected, if the agreement contains express or implied provisions by which it may be rendered certain. 23 R. C. L. 1278; Leutkemeyer v. Murdock, 267 F. 158 (C. C. A. 6); Chenoweth Hardware Co. v. Gray, 104 Ala. 236, 15 So. 911, 53 Am. St. Rep. 37; McMahon v. Mayor, 22 App. Div. 113, 47 N. Y. S. 1018; McCann v. City of New York, 52 App. Div. 358, 65 N. Y. S. 308. Whether the price to be paid was the market price at the time of delivery, as claimed by defendant, or the price fixed by the plaintiff at its factory, as plaintiff asserts, the data for determining the price was present and easily ascertainable. Which of the contentions made is correct is immaterial, in view of the verdict (hereafter to be considered) returned by the jury and the failure of the plaintiff to assail its action.

[3] The defendant, at all times down to the commencement of this suit, treated the contract as valid. Its request for delay carried with it the implication of willingness to perform at a later date. Its direction to cancel was also a recognition of the contract's binding force. With full knowledge that the plaintiff had undertaken its fulfillment, and had incurred expense in that behalf, and contemplated full performance, it suggested no infirmity in it, or intention to escape liability if damages were sought for its breach. The situation was such as to give full force to the rules of construction tersely stated in American Sugar Refining Co. v. Newnan Grocery Co., 284 F. 835, 836 (C. C. A. 5), as follows:

"A contract will be given that construction which will make it valid and binding, instead of a construction which would make it void or unenforceable. Hobbs v. McLean, 117 U. S. 567, 6 S. Ct. 870, 29 L. Ed. 940. Likewise a contract should be construed in favor of mutuality. 13 C. J. 539; Minn. Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85, 43 N. E. 774, 31 L. R. A. 529. A construction which makes confused verbiage intelligible will be adopted. Senter v. Senter, 87 Ohio St. 377, 101 N. E. 272."

See, also, La Grange-Grocery Co. v. Lamborn & Co., 283 F. 869, 872 (C. C. A. 5).

[4] Error is predicated upon the fact that in the court's general charge the jury was told that under the contract the price to be charged was, in conformity to defendant's contention, the market price at the time of shipment, which instruction was not at any time withdrawn, and that at the conclusion of such charge, and after inquiring if counsel had anything to suggest, the court thrice instructed the jury, with some variation in phraseology, that the contract price was the plaintiff's price in effect at its factory at the time when the goods were ready for delivery. Inconsistent and contradictory instructions, such as were given, tend to confusion and misapprehension, and, generally speaking, are ground for reversal, if given on a material point. 13 Standard Ency. Proc. 800, 802; Deserant v. Cerillos Coal R. R. Co., 178 U. S. 420, 20 S. Ct. 967, 44 L. Ed. 1127. Had the jury allowed the price for the goods as fixed at the plaintiff's factory at the time the furniture was ready for shipment, its verdict would have been for $6,521.42, and, if interest had been computed on that sum, for more than $7,100. Its verdict, however, for $3,756, was manifestly based on the market price at that date, as that price was determined by the jury, to which fact plaintiff has entered no objection. If the verdict returned included interest as prayed for, and which the court said the jury might allow or not, as it deemed proper, if it found for the plaintiff, the plaintiff's factory price was reduced by the jury by just about 25 per cent. If interest was not included in the verdict, the reduction was a trifle less than 23 per cent. The divergence in the evidence as to the extent the market prices were below the list prices was great, being from 15 per cent. to 50 per cent. The jury having determined to base its verdict upon the difference between the market price and the sum realized by plaintiff on the sale of the goods, it was for it to say what the market price was, and how much the decline had been from the plaintiff's price as fixed at the factory. If the decline was fixed at the rate of 23 or 25 per cent., there is evidence to justify its action.

Inasmuch as it adopted the rule as to the controlling price at the time of delivery for which the defendant has at all times contended, and of which the plaintiff does not complain, no benefit can accrue to defendant by the granting of a new trial, notwithstanding the contradictory nature of the charge.

We find no prejudicial error, and the judgment of the trial court is therefore affirmed.