# Roberts *against* Wilcock.

Grant of a cartway " of eight feet wide at least," agreeable to a plan and draft endorsed, *held* to entitle the grantee to more than eight feet, if necessary for its use as a cartway.

ERROR to the District Court for the city and county of *Philadelphia*.

Trespass *quare clausum fregit,* brought by Lewis Roberts

against William Wilcock, to recover damages from the defendant for trespassing, by himself and his agents, and with horses, carts, and carriages, upon the ground of said plaintiff, situate next to and adjoining a certain passage-way or alley of eight feet in width, leading from the rear end of defendant's lot, on the east side of Second street, and communicating with another passage-way, running into Mead alley. The plaintiff was the owner of the ground on either side of the said two passage-ways, through their whole length; and both parties claimed under a certain John Kaighn, who being the owner, inter alia, of the ground now owned by the plaintiff and defendant respectively, conveyed to John Grover, by deed dated September 15th 1792, the premises now the property of the defendant. The grant by that deed to Grover was in the following words: "All that messuage or tenement, and lot or piece of ground, situate on the east side of Delaware Second street continued, heretofore called Moyamensing Road, in the district of Southwark, containing in breadth on said street 17½ feet, and at the east end, or rear of said lot, 16½ feet, and in length or depth, east and west, 130 feet: bounded southward partly with ground sometime of Joseph Richardson, and partly with ground now or late of Robert Wood; eastward by the said John Kaighn's remaining ground; northward by the messuage and lot late of Samuel Kaighn and since of Captain John Gardner, and westward by Second street aforesaid." "Also, the right and privilege for the tenants and occupiers of the hereby granted premises, of a cartway and passage of eight feet wide *at least*, from the east end of the said hereby granted lot, over and along the said John Kaighn's remaining ground, to and from the aforesaid cartway or passage, left open and extending over and along the said lot granted by the said Robert Wood to the said John Kaighn, into and from the said German street, (or Mead alley) agreeable to the plan and draft hereon endorsed, and free ingress, egress and regress into, through, out of, and along the same cartway, arch and passages, with and without horses, cattle, carts and carriages, at all seasonable hours and times hereafter, in common with the said John Kaighn, his heirs and assigns, the owners and occupiers of his adjoining messuage and lot."

The lot granted by Robert Wood to John Kaighn, (referred to above) was conveyed by deed of September 25th 1788, as follows: "A certain tenement and lot of ground, situate on the north side of German street, (or Mead alley) in the district of Southwark, containing in breadth 23 feet, and in length or depth 59 feet, bounded northward by John Kaighn's lot, and westward by ground of Michael Fowlow. On which said lot, adjoining the line of the said Michael Fowlow's lot, an arch and cartway is left open, and continued northward from said German street to the said John Kaighn's other ground, hereinbefore described."

[Roberts v. Wilcock.]

The endorsed draft and plan above-mentioned were as follows:

Second street continued.

The plaintiff, after having proved by the production of the deeds, his title and that of the defendant, as deduced from John Kaighn and John Grover respectively, gave the following evidence:

Alexander Carlisle sworn.—I put up a post there in a court back of Mead alley. Lewis Roberts employed me. Gave them 8 feet 6 inches clear of the post, up to the head of the defendant's lot, in the open space. Put up one post. There was one taken down. I only put up one cedar post, about 18 months ago. It was in the summer of 1841. The suit was brought in December 1840. I put up the post twice. Mr Wilcock came there and said, I'll cut it down. I afterwards spliced it. I put it directly in the same hole.

Cross-examined.—It was a post about 6 inches diameter. I measured it for the mark of the hole—measured it twice—after

and before.  I did not put the post opposite the angle of the fence, but inside.  No gateway.  There was an up and tumble down fence there in Wilcock's lot.  I knew an old gate there 20 years ago.  At one time a cart could not get up except hub deep in mud.  Mr Roberts put it (the court) in order and paved it; and till then a quarter of a cord of wood could not be got up.

Benjamin Morton sworn. — I made that draft and measured the distance on the ground.  The court is in width 9 feet at the end on Mead alley, and falls back here 2 feet.  Opposite the angle it is 12 feet wide.  The 9 feet cartway is straight.  Never saw any post.  We lived there 20 years.  I was born there, and moved away when Wilcock came, about 6 years ago.  The head of the court was in a dreadful condition.  It is now in complete order.

Mary Ware sworn.—I lived in the plaintiff's upper house (the frame) full 4 years ago.  Moved from there about 19 months ago; and lived there about 3 years.  The defendant's carts came up with coal, turned round the horse, emptied the coal, and came out.  They cut the post down twice.  This was soon after we moved there, about 4 years ago.  Saw the carts more than once.  In turning the horse, his head was towards our door.  The horse's head came near the window and his feet on the cellar door.  The clothes lines were over and across the lot, from fence to fence— just at the upper part.

Cross-examined.—The tenants of the plaintiff put up the clothes line.  The owners of the line took them down.  The post was put there to tie the clothes line on, and went across.  Should not suppose that there was room for a cart to get up with the post up.  The defendant built up to 4 feet of his east line.

The defendant called

B. Callaghan sworn.—I drove up my cart there empty; tried to turn while the post was there, but could not.  It was impossible to turn my cart in the space left for the defendant.

Robert Mancher sworn. — I am a carpenter.  I was present when the post was cut down; distance was 7 feet 8 inches from post to fence.  There was a stone at the corner to protect the fence, 7 or 8 inches from the fence.  I saw a cart try to get up.  The carter attempted to back up with an empty cart.  The carter said it was impossible.

Cross-examined.—I made this measurement in the summer of 1841.  I measured with a two-foot rule.

Hugh Erls sworn.—Saw the post standing.  A cart could not get along; could not manage it in the year 1840 or 1841.

Mary Gardner sworn.—Have known these premises 60 years.  Gate always in the middle.  The opening was through the arch from Mead alley.  John Grover used to come up with a load of hay to the stable that stood at the east end—only way of getting up.

Cross-examined.—This passage is the same that it ever was.  Houses up the court have been built 30 or 40 years.

[Roberts v. Wilcock.]

Eliza Gardner sworn.—Have known these premises since 1798. There were just the brick houses then; it was open then where the frames now are. There are two frames at the end of the court. There was a stable on the rear of John Grover's lot, where the defendant's shop is. The tenants of the court put up a pig-pen on the vacant ground. My father, John Grover, complained; the tenants took it away. They had put up their clothes lines, which he forbid.

Cross-examined.—This pig-pen was before my father's death, in 1807; it did not remain there long. Sometimes the tenants were contrary, and my father cut down the lines, and not without his permission to be up. My uncle was John Kaighn. Saw them try to get up with horse and cart, and could not with post up.

Richard Bambrick sworn.—I saw an effort made to get by that post; the cart was backed in. The defendant told the carter to do his utmost to get in, which he did, but could not get in; there was not room enough. I cut down the post. The man who put up the post measured with a shovel.

Catharine Shermor sworn.—I have known these premises since the year 1799. There was a pig-pen at the end of the court. Mr Grover used it with loads of hay—two horses' load of clover hay, as high as would come under the arch; everything, clothes line, dog-house, that prevented the turn, had to be removed. Mr Kaighn told them that nothing was to be out; nothing to obstruct in any way.

Cross-examined.—This pen was put up by one of Mr Kaighn's tenants about 37 years ago, and the dog-house a little after, during Mr Grover's life. It is about 30 years since I have known anything about this lot.

The defendant also gave in evidence deed dated December 6th 1839, from Abigail Grover, &c. to him.

The plaintiff recalled Alexander Carlisle, who testified: "I did use a rule to measure the distance of the post, as I have stated, and there is the rule I measured with. I always carry it in this pocket. I did not measure with a shovel. I measured the distance, and made it 8 feet 6 inches after the post was planted."

Plaintiff's points:

1. That under the grant from John Kaighn to John Grover of 15th September 1792, the defendant is not entitled to a passage of greater width than 8 feet from the east end of his lot, into the cartway and passage leading out into Mead alley.

2. That the plan endorsed on the above-mentioned deed fixes the right of the parties claiming under that deed; and that the defendant has no right of passage over any part of the ground now of the plaintiff, not designated and marked down in said endorsed plan as the 8 feet passage and cartway.

3. That if the jury believe that the defendant entered upon the ground of plaintiff, without his license, beyond the said 8 feet passage-way above referred to, he was guilty of a trespass, and the plaintiff is entitled to a verdict.

[Roberts v. Wilcock.]

The court declined to charge specifically on these points, and said they were sufficiently answered and included in the following charge, which they delivered to the jury:

" That if the jury believe from the evidence that a post was placed by the plaintiff at the point, at which a line drawn in continuation of the western line of the passage leading up from Mead alley, northward, would intersect a direct northern line of a passage drawn from a point in the rear end of the defendant's lot, 8 feet northward from the point at which this line intersects the northern line of the lot formerly of Robert Wood [as marked on the deed of 1792], and that the defendant could not, whilst such a post stood there, pass with a cart from the rear of his lot to Mead alley, without running against that post, then the defendant had a right, under the deed of 1792, to remove that post, and the doing so was no trespass."

To this charge, and to the refusal of the court to answer the above points specifically and affirmatively, the plaintiff excepted.

The jury found for the defendant.

Errors assigned:

1. The Judge erred in declining to answer specifically the three several points of the plaintiff.

2. In not answering them affirmatively.

3. In charging " that if they believed that the defendant could not, while the post described by him stood where it did, pass with a cart from the rear of his lot to Mead alley, without running against that post, then said defendant had a right, under the deed of 1792, to remove that post, and the doing so was no trespass."

This case was argued at March Term 1844, by *G. M. Wharton*, for the plaintiff in error, and *Dallas* and *Wheeler*, contra; and was now re-argued by *G. M. Wharton* for the plaintiff in error, and *Dallas*, contra.

For the plaintiff in error were cited, 3 *Steph. N. P.* 27, 67; *Douglas* 716; *Woolrych on Ways* 50; 1 *Wms. Saund.* 323, note 6; 4 *M. & S.* 392; *Senhouse* v. *Christian*, (1 *T. R.* 560); *Howton* v. *Frearson*, (8 *Ibid.* 50); *Kirkham* v. *Sharp*, (1 *Whart.* 323); *M'Donald* v. *Lindall*, (3 *Rawle* 492); *Jer. Eq.* 366; *Metzler* v. *Kilgore*, (3 *P. R.* 250); *Darcy* v. *Askwith*, (*Hobart* 234).

For the defendant in error, 1 *Scott* 576; 3 *Stark. Ev.* 1480; *Watson* v. *Bioren*, (1 *Serg. & Rawle* 227).

The opinion of the Court was delivered by

Gibson, C. J.—Rules of construction are not the less to be regarded because they are trite; and there are three which bear directly on the grant before us. One of them requires that the construction be brought as near as may be to the apparent intent of the parties; and the others require, not only that every word be made to operate, but that it operate most strongly against the speaker.

2 P

[Roberts v. Wilcock.]

Now the intent of this grant was to pass a right of way adequate to the purpose named, and all the words must be taken, as far as they may, to be subsidiary to it. No construction is to be made that would defeat the grant; and so far is this principle carried, that a repugnant saving or reservation, however explicit, is to be disregarded. The subject of this grant is the cartway, not the ground over which it passes; and it would be unreasonable to let the grant be frustrated by words of description exclusively applicable to the ground. The grantee is to have a cartway, " eight feet wide at least," but at all events a cartway ; and the evidence abundantly proved that a passage barely eight feet wide would not be available for the purpose. The subject is designated as a cartway and passage, to express that the design was to grant, not a passage merely, but a passage for a particular vehicle—a cart of the ordinary size and construction; and it is to be presumed that the parties meant to appropriate space enough for such a vehicle. I will not say that a positive restriction of the breadth would not overbear this presumption; but the grant is of a passage and cartway, " eight feet wide *at least ;* and this calls for the application of the other rules which require every word in a grant to have effect, and most strongly so against the grantor.

What then is the effect of the words " at least ?" To bind it to the expression of an exact quantity, would be to give them no effect at all; for an exact quantity would have been more certainly expressed without them. It will not be said that the words " eight feet wide *at least*" are as definite as the words " exactly eight," which express no more than would be expressed by the words " eight feet," without an adjunct, which can serve no purpose but to qualify a meaning positively expressed without it. The words " at least," therefore, must be allowed to have a meaning; and it is not hard to assign an obvious one to them. While they express that the width of the passage shall not be less than a given measure in any event, they distinctly imply that it may be more. This conclusion is unavoidable, unless we assume that they express a definite quantity ; and to do so would bring the construction into collision with the rule just stated. But it is seen at a glance that they import uncertainty; and it is obvious on which side the uncertainty lies. The words " fully, or not less than" would have the same effect, as they would express that the grantee should have eight feet certain, and more if more should be indispensable, but eight at all events, whether indispensable or not. On the other hand the words " not more than" would have thrown the uncertainty on the other side, and implied that the grantee should not have so much if he could do with less. The reference to the diagram on the back of the deed, shows the side of the lot over which the grantee was to pass; but as it imports nothing like quantity in feet and inches, it does not affect the interpretation.

Judgment affirmed.