FAJARDO SUGAR COMPANY OF PORTO RICO, Plaintiff and Appellee, *v.* JOSEFINA RAFAELA CLAUDINA PORRATA-DORIA ET AL., Defendants and Appellants.

No. 4268. Argued January 13, 1928.—Decided February 20, 1928.

*O. B. Frazer & R. Castro Fernández* for the appellants.  *Jaime Sifre Jr., Horacio Franceschi* and *Diego O. Marrero* for the appellee.

Mr. Justice Wolf delivered the opinion of the court.

After a change of venue agreed upon the three defendants were enjoined by the District Court of San Juan from delivering certain cane to any other person than the complainant. The theory was that according to a certain contract exhibited to the court the defendants were under an obligation to deliver the said cane exclusively to the complainant. The writing was in form and contents an agreement common to Porto Rico and known as an agricultural contract (*contrato de refacción*). The complaint set forth that the defendants not only agreed to cultivate and deliver cane to the complainant for the term of four years beginning with the harvest of 1923, but also at the option of the complainant for a term of two years more.

The defendants and appellants maintain that the written contract was so drawn that under it the defendants were not bound to continue to cultivate and deliver cane to the complainant beyond the four years originally agreed upon. They necessarily concede that an additional time of two years was mentioned, but they maintain that the contract was couched in such language as to leave the defendants under no obligation to deliver cane to the appellee after the expiration of four years.

The theory of the complaint is one in specific performance and of course we agree with the appellants that no such performance can be decreed unless the terms of the contract are definite or at least susceptible of being so interpreted.

In the briefs and at the hearing, and in the supposition that the complainant had the right to insist on an extension, the question was raised and discussed of whether the complainant had given notice to the defendants of its intention to renew.

The fifth paragraph of the complaint is as follows:

"That the complainant, exercising the right conferred by the contract, has extended it for a term of two years beginning with the crop of 1926, that is, for the crops of 1927 and 1928, and that it has complied with all the obligations imposed by said contract and is willing to comply with them in the future."

The answer of the defendants to the rule to show cause did not deny paragraph 5 of the complaint and in point of fact set up that the defendants had notified the complainant of their intention not to continue the contract. Strictly speaking, perhaps, paragraph 5 might have been construed to state a conclusion of law, but in the absence of any objection thereto or any exception taken we may construe these words as a sufficient averment that the defendants were duly notified of the intention of the complainant to continue the contract.

In our researches we have found authorities that indicate that in certain cases very slight acts on one side are sufficient to put the other side on notice. At least this is true in many contracts with a right of extension and we have no doubt in this case that the defendants were duly advised of the desire of the complainant to continue. Furthermore, we find nothing in the record that would indicate that the lack of notice was any part of the trial court's theory or one on which the defendants relied in the court below in answering the rule to show cause. The defendants, assuming that a notice was necessary, would always have the opportunity either in the final hearing, or on motion, to raise the point that they were not duly advised of the intention of the complainant to ask for an extension.

We come, then, to a discussion of the real merits of the case. The nearest thing to a definition looking to the continuation of the cultivation and delivery to the complainant is to be found in clause number one setting forth the agreement of the parties. It provides as follows:

"The Mesdames Porrata Doria Veve, through their general at-

torney in fact, Julio Ferrer Torres, appearing herein, bind themselves to plant and cultivate the property described in the second paragraph of the explanatory part of this deed, for a term of not less than four nor more than six years or crops, beginning with the crop of 1923, at least one hundred acres of sugar cane to be ground annually in the factory of The Fajardo Sugar Company in Fajardo; it being understood that the surplus sugar cane which may be planted or cultivated during any year or crop on the said property shall also be ground in the said factory under the same terms of this general contract."

The appellants in a prior contract had similarly agreed to cultivate and deliver cane for a period of not less than two and not more than three years. The cultivation and delivery was in point of fact made for three years. As the recital in the agreement indicates that such additional cultivation and delivery was done by mutual consent, the fact of the previous continuation for the extra period of one year throws no light on the present situation. The former acts of the parties in this respect are completely nugatory.

The appellants have spread before us a number of cases where the courts have interpreted words like "at least," *Roberts* v. *Wilcock*, 8 Watts & S. 464; "not less than three years," *Millman* v. *Huntingdon*, 68 Hun, 258; "not less than," *Huston* v. *Harrington*, 107 Pac. (Wash.) 874; *Allers* v. *Ellis*, 87 N. C. 207; "not exceeding," *Campbell* v. *Jiménez*, 7 Misc. (N. Y.) 77; *United Press Co.* v. *New York Co.*, 164 N. Y. 406; "not more than," *Peacock* v. *Cummings*, 46 Penn. State, 434.

The tendency of these cases and others, when no other light is thrown on the term intended by the parties, is to construe expressions of this kind as either being void for indefiniteness or obliging the party against whom they are invoked only for the minimum term. When parties have fixed a single term it is generally required to be definite. If section one, *supra*, stood alone we might greatly hesitate in affirming the order in this case. The appellants therein

promised to cultivate for a term not to exceed six years, and they did not categorically promise to cultivate for more than four years.

This is a contract where the appellants definitely agree to cultivate and deliver cane for a price and the appellee for the purposes of cultivation and delivery agreed to loan the appellants not more than $20,000 a year. In the 22nd clause of the agreement it is the Fajardo Sugar Company that agrees to let the appellants have $20,000 for four years, but "in case of use being made of the extension, for two years more." The 24th, 25th and 26th clauses contain similar provisions with regard to the said extension or renewal, as follows:

"Twenty-fourth.—The sum of twenty thousand dollars of the agricultural contract allowed for each of the harvests or crops of the years 1923 to 1926, both inclusive, and in case use is made of the extension aforesaid, for the crops of 1927 and 1928, with interest, shall be liquidated and paid at the end of the grinding of each harvest or crop; but if at the termination of any harvest, after crediting the value of the product of the sugar cane, there is a balance in favor of the Fajardo Sugar Co. of Porto Rico for that year, the Mesdames Porrata Doria Veve may transfer it as the first item of the agricultural contract of the following crop, with the exception of the crop of 1926, or, in case use is made of the extension of two years aforesaid excepting that of 1928, which must be liquidated and paid entirely. So that the amount of this credit and interest must be entirely liquidated and paid the thirtieth of June, 1926, and in case use is made of the said extension of two years mentioned in this contract, not later than the thirtieth of June, 1928, on which date may be claimed any balance in favor of The Fajardo Sugar Company.

"Twenty-fifth:—To guarantee the payment of said agricultural contract and interest the Mesdames Porrata Doria Veve, through their general attorney in fact appearing herein, Mr. Ferrer Torres, encumber, from this moment, the sugar cane crops above mentioned in this deed and the sugar produced by the same during the crops of 1923 to 1926, both inclusive, and in case use is made of the said extension of two years, during the crops of 1927 and 1928 also; it being understood that the total value of the sugar cane produced on the property above described and which should be ground in the factory of

the Fajardo Sugar Company of Porto Rico during the term of this contract and its extension, if used, shall be destined preferentially to the payment of said agricultural contract, herein granted, and to that effect the Mesdames Porrata Doria Veve, represented herein by their general attorney in fact, Julio Ferrer Torres, authorize from this moment The Fajardo, Sugar Company of Porto Rico to apply, of course, the value of the semi-monthly liquidation of their sugar cane to the account of said agricultural contract until it is totally paid, and these payments shall draw interest at the rate of eight per cent per annum, which shall be liquidated on the same dates fixed for the liquidation of the interest of said agricultural loan, the parties agreeing, in the name of the persons they represent, that this guaranty be recorded in the Register of Agricultural Contracts.

"Twenty-sixth.—As additional guaranty and to answer for any amount of money which in any year or harvest, during the life of this contract or of its extension for planting and grinding sugar cane established by this deed, the Mesdames Porrata Doria Veve may owe The Fajardo Sugar Company of Porto Rico, because the value of the sugar cane has not covered the amount of the agricultural contract and interest for said year or harvest, by these presents Celina María Luisa Blanca, Josefina Rafaela Claudina and Albertina Raquel Porrata Doria Veve, represented by their general attorney in fact, Julio Ferrer Torres, mortgage in favor of the said Fajardo Sugar Company of Porto Rico for an amount not exceeding twenty thousand dollars the rural property described in the second paragraph of the explanatory part of this deed, and for an additional sum of three hundred dollars assigned for costs, expenses and attorney's fees in case of a judicial claim, it being understood also that said amount is also guaranteed by this mortgage, which should be recorded in the corresponding register."

Here the balance would lean somewhat in favor of the appellants, and it would look a little as if it should be the appellants who would have a right to extend. Weight might be given to this view by the fact that the Act of 1925 speaks of an agricultural contract as if it were in the nature of a mortgage, and so it is to a certain extent.

On the other hand, if we revert to the first clause it is the appellants who are promising to cultivate and deliver. Throughout the writing there are numerous expressions

which prevent the contract from being considered solely as one of mortgage or a loan with security.

The appellee says that the contract should be regarded as one of sale. It cites cases to show that the courts have characterized as sales contracts where the purchaser was bound to deliver materials to the vendor who was to turn out some other product. We do not find any of them applicable because the money turned over to the appellants in no sense partakes of a bailment. We do not find much aid in the decisions cited by the parties and the appellants foresaw this possibility at the hearing. The case is largely one of first impression.

We have indicated that if the first clause stood alone we should have grave doubts against the appellee. As an expression binding on the appellants for more than four years it is rather vague. The total term or possible term of a contract ought to be definitely set forth. However, in the 22nd, 24th, 25th and 26th clauses the parties speak of the extra years named as an extension or renewal. The two extra years named in paragraph one are subsequently always spoken of as such extension or renewal. The parties clearly contemplated a renewal or extension of the four years specifically mentioned and of which no question was raised. No one, however, can read this contract and say that the extension or renewal was at the sole election of a single one of the parties and this was one of the reasons why it could be urged, as did the appellants, that the extension was in favor of neither. As, however, there was an agreement mentioned for an extension, we are in harmony with the appellee when it maintains that that part of section 1256 of the Civil Code is applicable which provides:

"Should the contract involve a valuable consideration, the doubt shall be decided in favor of the greatest reciprocity of interests."

The whole section is as follows:

"Sec. 1256.—When it should be absolutely impossible to decide

the doubts by the rules established in the preceding sections, if they deal with incidental circumstances of the contract, and said contract involves a good consideration, they shall be decided in favor of the smallest transmission of rights and interest. Should the contract involve a valuable consideration, the doubt shall be decided in favor of the greatest reciprocity of interests.

"Should the doubts, the decision of which is referred to in this section, involve the principal object of the contract so that the intention or will of the contracting parties can not be ascertained, the contract shall be void."

Something of the idea of this reciprocity may be collected from Manresa, commenting on a lease where it was doubtful who had a right to renew. 10 Manresa, 613, Edition of Reus, 1919.

The case of *Smitherman Cotton Mills* v. *Radleman Mfg. Co.*, 34 S. E. 446, also lends force to this conclusion. This was a case of a contract to deliver warp for one year with the privilege of renewing for three years. The court held that it was not the intention of the parties to renew merely by mutual consent as they could have done that without stipulation; that if it had been intended that the renewal should be only at the election of one of the parties that party would have been named. The court concluded that either party had the privilege to renew.

The policy of the courts is, when reasonably possible, to make all the words of an instrument mean something or to make confused verbiage intelligible.

We cite more particularly the cases which involve a principle of mutuality. *American Sugar Refining Co.* v *Newman Grocery Co.*, 284 Fed. 835; *La Grange Grocery Co.* v. *Lamborn & Co.*, 283 Fed. 869; *Senter* v. *Senter*, 101 S. E. 272; *Ward* v. *McKinley*, 191 Pac. 322. A source of other authorities will be found in 13 C. J. 539, par. 506.

We feel bound to give vitality to the extension definitely mentioned in the contract. *Ut res magis valeat quam pereat.* This is a maxim frequently applied to statutes and wills, but

is also applicable to contracts, as evidenced by *Laing* v. *McClung*, 137 S. E. 744. Sections 1251 and 1252 of the Civil Code embody to a certain degree the principles of this case.

The order appealed from will be affirmed.

Mr. Justice Texidor took no part in the decision of this case.