FAJARDO SUGAR COMPANY OF PORTO RICO, demandante y apelada, *v.* JOSEFINA RAFAELA CLAUDINA, CELINA MARÍA LUISA, BLANCA y ALBERTINA RAQUEL PORRATA DORIA y VEVE, demandadas y apelantes.

No. 4268.—*Visto:* Enero 13, 1928.    *Resuelto:* Febrero 20, 1928.

1. CUMPLIMIENTO ESPECÍFICO — CONTRATOS CUYO CUMPLIMIENTO PUEDE DECRETARSE *(Enforceable)*—CONTRATOS INDUBITABLES, DEFINIDOS O CIERTOS—EN GENERAL.—No puede decretarse el cumplimiento específico de un contrato a menos que sus términos sean definidos o por lo menos susceptibles de ser así interpretados.

2. CUMPLIMIENTO ESPECÍFICO—PROCEDIMIENTOS Y REMEDIOS—DE LA DEMANDA—ALEGACIÓN EN CUANTO AL CUMPLIMIENTO DE LAS OBLIGACIONES IMPUESTAS POR EL MISMO.—En demanda sobre cumplimiento específico de contrato de refacción agrícola sobre siembra y entrega de cañas durante un término obligado de cuatro años la alegación al efecto de que, haciendo uso de tal derecho de opción ha prorrogado el contrato por el término de dos años, y ha cumplido con todas las obligaciones impuéstales por el contrato, en ausencia de objeción o excepción, pueden interpretarse como una alegación sufi-

ciente de que los demandados fueron notificados debidamente por el deman-
dante de su intención de prorrogar el contrato.

3. CONTRATOS—INTERPRETACIÓN Y "OPERATION"—LUGAR Y TIEMPO—TÉRMINO
DE DURACIÓN—INTENCIÓN DE LAS PARTES.—Aún cuando algunos de los pá-
rrafos de un contrato de refacción agrícola, tomados separadamente, po-
drían dar la idea de que las partes contrataron por un tiempo indefinido
de cuatro a seis años, sin embargo, cuando el contrato en su totalidad es
susceptible de ser interpretado como creando un término definido de cuatro
años y una prórroga de dos, y las partes, por la frecuente repetición de
la palabra *prórroga,* han demostrado que ellos tuvieron una prórroga en
mente, tal interpretación debe seguirse para dar efecto a todas las palabras
del contrato.

4. CONTRATOS—INTERPRETACIÓN Y "OPERATION"—LUGAR Y TIEMPO—TÉRMINO DE
DURACIÓN—EN GENERAL.—Cuando un contrato de refacción agrícola hace
referencia a una *prórroga* sin definir quién tiene derecho a ella, la duda, de
acuerdo con el artículo 1256 del Código Civil, debe resolverse a favor de
la mayor reciprocidad de intereses y cualquiera de las partes tiene derecho
a dicha prórroga.

RESOLUCIÓN de *Pablo Berga,* J. (San Juan), concediendo *injunction*
preliminar solicitado. *Confirmada.*

*O. B. Frazer & R. Castro Fernández,* abogados de los apelantes;
*Jaime Sifre, Jr., Horacio Franceschi* y *Diego O. Marrero,* aboga-
dos de la apelada.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tri-
bunal.

Después de haberse convenido el traslado del pleito, la
Corte de Distrito de San Juan dictó una orden de *injunction*
prohibiendo a las tres demandadas que entregaran cierta
caña de azúcar a otra persona que no fuera la demandante.
La teoría era que de acuerdo con cierto contrato que fué
presentado a la corte, las demandadas estaban en la obliga-
ción de entregar dicha caña exclusivamente a la deman-
dante. Por su forma y contenido el escrito era un conve-
nio corriente en Puerto Rico conocido con el nombre de
contrato de refacción agrícola. En la demanda se alegaba
que las demandadas no sólo convinieron en sembrar y en-
tregar la caña de azúcar cultivada a la demandante durante
el término de cuatro años a partir de la zafra de 1923, sino
que, a opción de la demandante, dicho convenio era pro-
rrogable por un término adicional de dos años.

Las demandadas y apelantes sostienen que el contrato

escrito fué. redactado en tal forma que de acuerdo con' los términos del mismo ellas no estaban obligadas a continuar sembrando' y entregando la caña cultivada a la demandante después de transcurridos los cuatro años convenidos originalmente. Admiten necesariamente que se mencionó un tiempo adicional de dos años, pero sostienen que el contrato fué redactado en tal forma que no imponía a las demandadas la obligación de entregar caña alguna a la apelada después de transcurridos los cuatro años.

[1] En la demanda se solicita el cumplimiento específico, y, por supuesto, convenimos con las apelantes en que no puede decretarse tal cumplimiento a menos que los términos del contrato sean definidos o por lo menos susceptibles de ser así interpretados.

[2] En los alegatos y durante la vista, y bajo el supuesto de que la demandante tuviese derecho a insistir en la prórroga, se levantó y discutió la cuestión de si la demandante había notificado a las demandadas su intención de prorrogar el contrato.

El quinto párrafo de la demanda dice así:

"Que la demandante haciendo uso del derecho que se le concede . en el referido contrato ha prorrogado el mismo por el término de dos años a partir de la zafra de 1926, o sea por las zafras de 1927 y 1928, y que ha cumplido con todas las obligaciones impuéstales por dicho contrato y está dispuesta a cumplirlas en lo sucesivo."

La contestación de las demandadas a la orden para mostrar causa no negaba el párrafo 5 de la demanda, y en realidad alegaba que las demandadas habían notificado a la demandante su intención de no continuar con el contrato. Hablando estrictamente, el párrafo 5 de la demanda podría tal vez interpretarse en el sentido de alegar una conclusión de derecho, pero en ausencia de objeción o de excepción alguna contra el mismo, podemos interpretar estas palabras como una alegación suficiente de que las demandadas fueron notificadas debidamente por la demandante de su intención de prorrogar el contrato.

En las investigaciones que hemos hecho de este caso hemos hallado autoridades que indican que en ciertos casos ligeras actuaciones de una parte son suficientes para dar aviso a la otra. Por lo menos esto es cierto en muchos contratos en que existe el derecho de prórroga y no tenemos duda en este caso de que las demandadas fueron notificadas debidamente del deseo de la demandante de continuar el contrato. Además, nada hallamos en los autos que indique que la falta de notificación formara parte de la teoría de la corte inferior o que las demandadas descansaran en tal falta en la corte de distrito al contestar la orden para mostrar causa. Asumiendo que fuera necesaria la notificación, las demandadas siempre tendrían oportunidad, ora en la vista final o mediante moción, de levantar la cuestión de que no fueron debidamente notificadas por la demandante de su intención de pedir que el contrato fuese prorrogado.

[3, 4] Entramos ahora a discutir los verdaderos méritos del caso. Lo más próximo a una definición relativa a la continuación de la siembra y entrega a la demandante de la caña cultivada, puede hallarse en la cláusula primera, en la cual se expone el convenio entre las partes. Lee como sigue:

"Las señoras Porrata Doria y Veve, por voz de su apoderado general don Julio Ferrer y Torres, aquí compareciente, se comprometen a sembrar y cultivar en la finca descrita en el hecho segundo de la parte expositiva de esta escritura, por un término de no menos de cuatro años ni mayor de seis años o cosechos, a contar de la zafra de mil novecientos veinte y tres, un mínimum de *cien cuerdas* de cañas de azúcar para darles a moler anualmente a la factoría de The Fajardo Sugar Company of Porto Rico, en Fajardo; siendo entendido que todas las otras cañas que en cualquier año o cosechó, dentro de dicho término, se hubieren sembrado o se sembraren en la expresada finca, habrán también de ser molidas en la indicada factoría, bajo los mismos términos generales de este contrato."

En virtud de un contrato anterior las apelantes igualmente habían convenido en sembrar y entregar la caña cul-

tivada por un período no menor de dos ni mayor de tres años. El cultivo y la entrega fueron en realidad de verdad hechos por tres años. Según la cláusula del convenio indica, como tal cultivo y entrega adicionales se hacían por mutuo consentimiento, el hecho de que anteriormente se continuara el contrato por un período adicional de un año no arroja luz alguna en la presente situación. A este respecto, de nada valen las actuaciones anteriores de las partes.

Las apelantes nos han citado un número de casos en que las cortes han interpretado palabras como *"at least"* (por lo menos), *Roberts* v. *Wilcock,* 8 Watts & S. 464; *"not less than three years"* (no menos de tres años), *Millman* v. *Huntingdon,* 68 Hun. 258; *"not less than"* (no menos de), *Huston* v. *Harrington,* 107 Pac. (Wash.) 874; *Allers* v. *Ellis,* 87 N. C. 207; *"not exceeding"* (que no exceda de), *Campbell* v. *Jiménez,* 7 Misc. (N.Y) 77; *United Press Co.* v. *New York, Co.,* 164 N. Y. 406; *"not more than"* (no más de), *Peacock* v. *Cummings,* 46 Penn. State 434.

La tendencia de éstos y otros casos es, cuando no se arroja otra luz sobre el período de tiempo que tuvieron en mente las partes, interpretar expresiones de esta clase como nulas por ser indefinidas, u obligar a la parte contra quien se invocan solamente durante el período mínimo. Cuando las partes han fijado un solo período de tiempo, en general se requiere que sea definido. Si la cláusula primera, *supra,* se hallase sola, tal vez vacilaríamos grandemente al confirmar la resolución en este caso. Según dicha cláusula, las demandadas convenían en cultivar las fincas por un período no mayor de seis años, y no prometieron categóricamente cultivarlas por más de cuatro años.

Este es un contrato en que las apelantes convienen definidamente en sembrar y entregar la caña de azúcar cultivada por determinado precio, y para los fines de cultivo y entrega la apelada conviene en entregar en calidad de préstamo a las demandadas no más de $20,000 al año. Según la cláusula 22 del contrato, es la Fajardo Sugar Co.

la que conviene en entregar a las apelantes la suma de $20,000 durante cuatro años, y "caso de hacerse uso de la prórroga que en la misma se concede, por dos años más." Las cláusulas 24, 25 y 26 contienen disposiciones similares con respecto a dicha prórroga. Leen como sigue:

"*Vigésima cuarta.* El montante del crédito refaccionario de *veinte mil dollars* que se concede para cada una de las zafras o cosechos de mil novecientos veinte y tres a mil novecientos veinte y seis, ambas inclusive, y, caso de hacerse uso de la prórroga antes dicha, también para las zafras de mil novecientos veinte y siete y mil novecientos veinte y ocho, y sus intereses, habrán de ser liquidados y pagados al terminarse la molienda de cada una de dichas zafras o cosechos; pero si a la terminación de un cosecho cualquiera, después de hechos los abonos del producto de las cañas, resultase algún saldo a favor de The Fajardo Sugar Company of Porto Rico por ese cosecho, las señoras Porrata Doria y Veve podrán traspasarlo como primera partida al crédito refaccionario del cosecho subsiguiente, con excepción del cosecho de mil novecientos veinte y seis, o, caso de hacerse uso de la prórroga de dos años más ya citada, con el de mil novecientos veinte y ocho, que deberá ser completamente liquidado y pagado. De manera que el capital de este crédito y sus intereses, deberán ser completamente liquidados y pagados el día treinta de junio de mil novecientos veinte y seis, y, caso de hacerse uso de la citada prórroga de dos años a que se refiere este contrato, no más tarde del día treinta de junio de mil novecientos veinte y ocho, desde cuya fecha será exigible cualquier saldo que pudiera resultar a favor de The Fajardo Sugar Company of Porto Rico.

"*Vigésima quinta.* En garantía y seguridad del pago y devolución del indicado crédito refaccionario y sus intereses, las señoras Porrata Doria y Veve, representadas por su apoderado general, el compareciente señor *Ferrer y Torres,* afectan, desde ahora, las plantaciones de cañas de que antes se habla en esta escritura y el azúcar que las mismas produzcan durante las zafras de mil novecientos veinte y tres a mil novecientos veinte y seis, ambas inclusive, y, caso de hacerse uso de la ya mencionada prórroga de dos años más, durante las zafras de mil novecientos veinte y siete y mil novecientos veinte y ocho, también; entendiéndose que todo el producto de las cañas que se produzcan en la finca descrita anteriormente y que habrán de molerse en la factoría de The Fajardo Sugar Company of Porto Rico durante el término de este contrato y de la prórroga,

en su caso, será destinada preferentemente al pago del indicado cré-
dito refaccionario, aquí concedido y, a tal efecto, las señoras Po-
rrata Doria y Veve, representadas en este acto por su apoderado
general don Julio Ferrer y Torres, autorizan desde ahora a The
Fajardo Sugar Company of Porto Rico, para aplicar, desde luego,
el producto de las liquidaciones quincenales de sus cañas a la refe-
rida cuenta refaccionaria, hasta tanto que la misma sea totalmente
satisfecha, y estos abonos devengarán, a su vez intereses a razón del
ocho por ciento anual, que serán liquidados en las mismas fechas
fijadas para la liquidación de los intereses de dicho préstamo refac-
cionario, acordándose entre las partes, en la representación que os-
tentan, que a los efectos de esta garantía se anote este contrato en
el Registro de Contratos Agrícolas.

"*Vigésima sexta.* Como garantía supletoria y para responder
de cualquier cantidad de dinero que en cualquier año o cosecho,
durante el término de este contrato o de la prórroga en su caso,
del contrato de siembra y molienda de cañas que por esta escritura
se establece, quedaren adeudando las expresadas señoras Porrata Do-
ria y Veve a The Fajardo Sugar Company of Porto Rico, por no
haber el producto de sus cañas alcanzado a cubrir el importe del
crédito refaccionario y sus intereses de dicho año o cosecho, por la
presente, doña Celina-María Luisa Blanca, doña Josefina-Rafaela-
Claudina y doña Albertina-Raquel Porrata Doria y Veve, represen-
tadas por su apoderado general don Julio Ferrer y Torres, hipotecan
a favor de la expresada The Fajardo Sugar Company of Porto Rico,
por una cantidad máxima de *veinte mil dollars,* la finca rústica des-
crita en el hecho segundo de la parte expositiva de esta escritura,
más una cantidad adicional de *tres cientos dollars* que se señala para
costas, gastos y honorarios de abogado en caso de reclamación ju-
dicial, cuya cantidad se entenderá también garantizada por esta hi-
poteca que habrá de inscribirse en el Registro correspondiente.''

Aquí la balanza se inclinaría un poco a favor de las
apelantes, pues parecería algo que ellas eran las que te-
nían derecho a la prórroga. Podría darse peso a este punto
de vista por el hecho de que la Ley de 1925 habla de con-
tratos de refacción como si fueran de la naturaleza de una
hipoteca, y así lo son hasta cierto punto.

Por otra parte, si retrocedemos a la cláusula primera,
las apelantes son las que se comprometen a cultivar y a en-
tregar. En todo el documento hay numerosas expresiones

que impiden que el contrato sea considerado solamente como uno de hipoteca o un préstamo con garantía.

La apelada dice que el contrato debe ser considerado como de compraventa. Cita casos para demostrar que las cortes han calificado como de compraventa contratos en que el comprador se obligaba a entregar materiales al vendedor, quien a su vez tenía que producir otros efectos. No hallamos que ninguno de estos casos sea aplicable, porque el dinero entregado a las apelantes en ningún sentido participa de la naturaleza de un depósito (*bailment*). No hallamos que nos sirvan de mucha ayuda la mayoría de los casos citados por las partes, y las apelantes previeron esta posibilidad durante la vista. El caso es principalmente uno de primera impresión.

Ya hemos indicado que si la cláusula primera se hallara sola, tendríamos serias dudas contra la apelada. Como una expresión que obligue a las apelantes por más de cuatro años, es algo vaga. Se debe exponer claramente el período total o posible de un contrato. Sin embargo, en las cláusulas 22, 24, 25 y 26 las partes hablan de los años adicionales mencionados como si se tratara de una prórroga. Los dos años adicionales mencionados en el párrafo primero son siempre mencionados posteriormente como "la citada prórroga." Las partes claramente tuvieron en mente una prórroga de los cuatro años específicamente mencionados, sobre los cuales no se levantó cuestión alguna. Sin embargo, nadie puede leer ese contrato y decir que la prórroga quedaba a la elección única de cualquiera de las partes, y ésta es una de las razones por las cuales podría contenderse, como lo hicieron las apelantes, que la prórroga no se hacía ni a favor de una ni de otra de las partes. No obstante, como se mencionó un convenio sobre una prórroga, estamos de acuerdo con la apelada al sostener que es aplicable aquella parte del artículo 1256 del Código Civil que dispone:

"Si el contrato fuere oneroso, la duda se resolverá en favor de la mayor reciprocidad de intereses."

· Este artículo en su totalidad dice así:

"Cuando absolutamente fuere imposible resolver las dudas por las reglas establecidas en los artículos precedentes, si aquéllas recaen sobre circunstancias accidentales del contrato, y éste fuere gratuito, se resolverán en favor de la menor transmisión de derechos e intereses. Si el contrato fuere oneroso, la duda se resolverá en favor de la mayor reciprocidad de intereses.

"Si las dudas de cuya resolución se trata en este artículo recayesen sobre el objeto principal del contrato, de suerte que no pueda venirse en conocimiento de cuál fué la intención o voluntad de los contratantes, el contrato será nulo."

Algo sobre esta teoría de reciprocidad puede hallarse en Manresa al comentar sobre un arrendamiento en que era dudoso quién tenía el derecho a prorrogarlo. 10 Manresa 613, Edición de Reus, 1919.

El caso de *Smitherman Cotton Mills* v. *Radleman Mfg. Co.*, 34 S. E. 446, también da peso a esta conclusión. Este era un caso de un contrato para entregar urdimbre durante un año, con privilegio de prorrogarlo por tres años. La corte resolvió que no fué la intención de las partes prorrogar el contrato con el mero consentimiento mutuo de las partes, ya que podían haberlo hecho así sin hacer estipulación alguna; que si la intención hubiese sido que la prórroga se dejara a la elección de una de las partes, tal parte hubiese sido designada. La corte terminó diciendo que cualquiera de las partes tenía derecho a prorrogar.

· La política de las cortes es, siempre que sea razonablemente posible, hacer que cada una de las palabras contenidas en un documento tenga algún significado, o hacer que el lenguaje confuso sea inteligible. Citamos más particularmente los casos que envuelven el principio de mutualidad. *American Sugar Refining Co.* v. *Newman Grocery Co.*, 284 Fed. 835; *La Grange Grocery Co.* v. *Lamborn & Co.*, 283 Fed. 869; *Senter* v. *Sentes*, 101 S. E. 272; *Ward* v.

*McKinley,* 191 Pac. 322. Una fuente de otras autoridades se hallará en 13 C. J. 539, pár. 506.

Nos sentimos obligados a darle vitalidad a la prórroga mencionada definidamente en el contrato. *Ut res magis valeat quam pereat.* Esta es una máxima aplicada frecuentemente a estatutos y testamentos, pero que es aplicable también a contratos, según lo demuestra el caso de *Laing v. McGlung,* 137 S. E. 744.

Los artículos 1251 y 1252 del Código Civil abarcan hasta cierto punto los principios de este caso.

*Debe confirmarse la resolución apelada.*

El Juez Asociado Señor Texidor no intervino.